STATE OF NORTH CAROLINA v. KENNETH WAYNE MAREADY

No. COA07-171-2

(Filed 6 July 2010)

**1. Constitutional Law— per se ineffective assistance of counsel—admission of guilt—failure to procure defendant's consent**

Trial counsel's assistance was *per se* ineffective and defendant was awarded a new trial on his convictions for second-degree murder and two counts of misdemeanor assault with a deadly weapon. The findings of fact made by the trial court at a hearing held pursuant to *State v. Harbison*, 315 N.C. 175, clearly and unequivocally indicated that defendant never gave his counsel explicit consent to admit defendant's guilt to those charges prior to the closing arguments.

**2. Appeal and Error— preservation of issues—argument deemed abandoned—no factual or legal support**

Defendant's argument that he received ineffective assistance of counsel because his trial attorney failed to object to inadmissible evidence, improper jury instructions, and unconstitutional entry of judgment was deemed abandoned where defendant failed to make a prejudice argument supported by factual or legal support.

**3. Criminal Law— instructions—erroneous answer to jury question—definition of intent**

The trial court committed prejudicial error in its answer to the jury's question about the meaning of the word "intent" in the

1

context of the jury instruction for assault with a deadly weapon and assault with a deadly weapon inflicting serious injury. The trial court's answer allowed the jury to convict defendant based on an improperly broad definition of intent.

**4. Evidence— lay opinion testimony—accident reconstruction—no plain error**

The trial court erred in admitting opinion testimony from two police officers concerning a car accident based on their examination of the scene after the accident. The officers did not witness the accident and were not offered as experts in accident reconstruction. However, defendant failed to show plain error as he elicited the same testimony on cross-examination.

**5. Evidence— prior jail sentence—no error—no prejudicial error**

The trial court did not err in admitting a police officer's testimony that defendant had just gotten out of jail recently. Even assuming *arguendo* that the admission of this evidence was improper, defendant failed to show prejudice where defendant's driving record was admitted at trial and showed that he had previously been sentenced to 12 months incarceration for driving while intoxicated.

**6. Jury— instructions—operating a vehicle to elude arrest—no plain error**

The trial court did not commit plain error in its instructions to the jury on the charge of operating a vehicle to elude arrest. Defendant failed to show how the trial court's omission of the fourth element of the offense in one of four times it instructed the jury on the charge was prejudicial.

**7. Appeal and Error— preservation of issues—argument deemed abandoned—no factual or legal support**

Defendant's argument that his convictions for multiple offenses violated the prohibition against double jeopardy was deemed abandoned where defendant failed to make any argument with factual or legal support.

ERVIN, Judge, concurring in part and concurring in the result in part.

Appeal by Defendant from judgments entered 24 April 2006 by Judge Abraham P. Jones in Superior Court, Durham County. Heard in

the Court of Appeals originally on 19 September 2007, and opinion filed 15 January 2008. Remanded to the Court of Appeals for reconsideration by order of the North Carolina Supreme Court on 12 December 2008.

*Attorney General Roy Cooper, by Special Counsel Isaac T. Avery, III, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Daniel R. Pollitt, for Defendant-Appellant.*

McGEE, Judge.

Kenneth Wayne Maready (Defendant) was convicted on 24 April 2006 of second-degree murder, felony eluding arrest, assault with a deadly weapon inflicting serious injury, two counts of assault with a deadly weapon, DWI, reckless driving, DWLR, misdemeanor larceny, and misdemeanor possession of stolen goods. The jury also found that Defendant had attained habitual felon status and further found, as an aggravating factor, that "[D]efendant knowingly created a great risk of death to more than one person by means of a weapon or device which would normally be hazardous to the lives of more than one person[.]" The trial court sentenced Defendant to prison terms of 270 months to 333 months for second-degree murder, 150 months to 189 months for assault with a deadly weapon inflicting serious injury, 150 months to 189 months for felony eluding arrest, 24 months for DWI, 150 days for each count of assault with a deadly weapon, 120 days for DWLR, 120 days for misdemeanor larceny, and 60 days for reckless driving; all sentences were to run consecutively and credit was given for time served. Judgment was arrested for misdemeanor possession of stolen goods.

Defendant appealed. A divided panel of our Court reversed and remanded to the trial court for a new trial based upon our holdings that a law enforcement stop of Defendant just prior to the traffic accident was improper, that the trial court erroneously instructed the jury on the element of intent, and that the trial court erroneously admitted several of Defendant's prior convictions of DWI into evidence. *State v. Maready*, 188 N.C. App. 169, 654 S.E.2d 769 (2008) (*Maready I*). The North Carolina Supreme Court reversed and remanded to our Court for consideration of assignments of error not addressed in *Maready I. State v. Maready*, 362 N.C. 614, 669 S.E.2d 564 (2008) (*Maready II*). More detailed statements of the facts may be found in *Maready I* and *Maready II*, and additional relevant facts will be discussed in the body of this opinion.

I.

[1] In Defendant's tenth argument, he contended his trial counsel's assistance was *per se* ineffective, and he should therefore be awarded a new trial on his convictions for second-degree murder, and two counts of misdemeanor assault with a deadly weapon. In the alternative, Defendant requested that we remand to the trial court for a hearing to determine whether Defendant had properly consented to his trial counsel's admission of guilt to these three charges under *State v. Harbison*, 315 N.C. 175, 337 S.E.2d 504 (1985). Defendant requested no relief pursuant to *Harbison* for the remaining charges, and we therefore do not address them. *See State v. Millsaps*, 356 N.C. 556, 569-70, 572 S.E.2d 767, 776-77 (2002). We agreed that a hearing was required to determine whether Defendant gave informed consent for his counsel's admissions of guilt to the three above-listed charges. We remanded the matter to the trial court for a hearing by order entered 6 April 2009. We instructed the trial court to make findings of fact based upon the evidence presented at the hearing. The hearing was conducted by the trial court on 14 September 2009, and the trial court entered its order on the hearing on 14 October 2009. We allowed the parties to file supplemental briefs to augment their original arguments on appeal in light of the findings made by the trial court in its 14 October 2009 order.

Defendant initially pled not guilty to the charges for which he was tried. During closing argument, Defendant's counsel conceded that the State had met its burden with respect to the charges of DWI, reckless driving, DWLR and misdemeanor "larceny and/or possession of stolen property." Defendant's counsel also made the following statements:

> We do have the two misdemeanor assaults. . . . We don't contest those. They are inclusive in the events that have significant issues associated with them, but we don't contest those. And you can go and make your decisions accordingly. . . . [Defendant] holds absolute—holds responsibility for [the death of the victim]. I just argue it's not murder. It's Involuntary Manslaughter.

Defendant's counsel discussed the elements of involuntary manslaughter with the jury, stating that the second element was "that . . . [D]efendant's impaired driving proximately caused the victim's death. That's true. [Defendant's] guilty of that and should be found guilty of that." Defendant's counsel also stated that: "[Defendant's]

already admitted to you guilt . . . to . . . Assault with a Deadly Weapon times two[.]"

At the close of all the evidence and after closing arguments, but before jury instruction, Defendant's counsel again admitted Defendant's guilt to the charges of reckless driving, DWI, DWLR and misdemeanor possession of stolen goods. The trial court asked Defendant: "Have you agreed that your attorney [concedes guilt to reckless driving, DWI, DWLR and misdemeanor possession of stolen goods]?" and Defendant answered, "Yes, sir." Defendant also volunteered that he had consented to admit his guilt to the charge of misdemeanor larceny, and the following colloquy occurred:

> [The State]: Misdemeanor Larceny. And there might even be the Involuntary Manslaughter, I believe, at one point. Maybe I misunderstood that part of the argument, but I thought when he was arguing—
>
> The Court: There was also misdemeanor larceny, that's correct.
>
> [Defense Counsel]: Your Honor, I argued that's what [Defendant] should be convicted of.
>
> [The State]: Okay. Never mind then. I won't go there.

The matter was then dropped, and the trial court never asked Defendant if he had agreed to his counsel's admitting guilt on the charges of involuntary manslaughter or the two counts of assault with a deadly weapon.

The record of the trial was devoid of any evidence that Defendant gave informed consent to his counsel's admission of guilt for the charges of involuntary manslaughter or the two counts of assault with a deadly weapon. For this reason, we remanded to the trial court for an evidentiary hearing to determine whether Defendant gave his counsel the consent required by *Harbison* and its progeny, discussed below, for the admissions of guilt made at trial by Defendant's counsel. Our Supreme Court has stated that:

> A defendant's right to plead "not guilty" has been carefully guarded by the courts. When a defendant enters a plea of "not guilty," he preserves two fundamental rights. First, he preserves the right to a fair trial as provided by the Sixth Amendment. Second, he preserves the right to hold the government to proof beyond a reasonable doubt. A plea decision must be made exclu-

sively by the defendant. "A plea of guilty or no contest involves the waiver of various fundamental rights such as the privilege against self-incrimination, the right of confrontation and the right to trial by jury." *State v. Sinclair*, 301 N.C. 193, 197, 270 S.E.2d 418, 421 (1980). Because of the gravity of the consequences, a decision to plead guilty must be made knowingly and voluntarily by the defendant after full appraisal of the consequences. *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L. Ed. 2d 274 (1969); N.C.G.S. § 15A-1011 through § 15A-1026; *State v. Sinclair*, 301 N.C. 193, 270 S.E.2d 418 (1980).

*Harbison*, 315 N.C. at 180, 337 S.E.2d at 507 (citations omitted). The *Harbison* Court held that a defendant establishes a *per se* claim of ineffective assistance of counsel where the evidence shows the defendant's counsel admitted guilt to any charge without the defendant's informed consent. *Id.*, 337 S.E.2d at 507-08. The Court in *Harbison* further held that this violation required that the defendant receive a new trial. *Id.* at 180-81, 337 S.E.2d at 508.

In *State v. Matthews*, 358 N.C. 102, 591 S.E.2d 535 (2004), the defendant's counsel argued to the jury that it should find his client guilty of second-degree murder, not first-degree murder. The record did not indicate that the defendant had given consent to his attorney to make this concession. The defendant was found guilty of first-degree murder and appealed. The defendant argued that his counsel's admission of the defendant's guilt to second-degree murder without the defendant's consent violated the holding in *Harbison*. The *Matthews* Court decided it did not have enough evidence in the record to make a determination concerning whether the defendant had consented to the admission of guilt, and remanded to the trial court for a hearing on the matter.

In *Matthews*, the trial court conducted a hearing and filed an order ruling that the defendant had consented to a strategy of arguing for a conviction on the lesser included charge of second-degree murder in order to avoid a first-degree murder conviction. The trial court's findings indicated that the defendant had never *expressly* agreed to the strategy, but he had been present in numerous meetings where this strategy was discussed and never objected or voiced any reservations. In fact, the defendant's counsel "was certain that defendant concurred with [the strategy.]" *Id.* at 107, 591 S.E.2d at 539. Our Supreme Court disagreed with the ruling of the trial court and remanded for a new trial.

The trial court found that defense counsel's trial strategy was "to convince the jury that defendant was guilty of something other than first degree murder." The trial court found that, because defendant consented to this overall strategy, and because "[d]efendant's IQ was high," defendant implicitly allowed his trial counsel to concede his guilt. However, we conclude that *Harbison* requires more than implicit consent based on an over-all trial strategy and defendant's intelligence. "[T]he gravity of the consequences demands that the decision to plead guilty remain in the defendant's hands. When counsel admits his client's guilt without first obtaining the client's consent, the client's rights to a fair trial and to put the State to the burden of proof are completely swept away. The practical effect is the same as if counsel had entered a plea of guilty without the client's consent. Counsel in such situations denies the client's right to have the issue of guilt or innocence decided by a jury." *Harbison*, 315 N.C. at 180, 337 S.E.2d at 507.

*Matthews*, 358 N.C. at 108-09, 591 S.E.2d at 540.

*Harbison* cites N.C. Gen. Stat. §§ 15A-1011 through 1026, which concern acceptance of guilty pleas by the superior court. *Harbison*, 315 N.C. at 180, 337 S.E.2d at 507 ("Because of the gravity of the consequences, a decision to plead guilty must be made knowingly and voluntarily by the defendant after full appraisal of the consequences. *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L. Ed. 2d 274 (1969); N.C.G.S. § 15A-1011 through § 15A-1026; *State v. Sinclair*, 301 N.C. 193, 270 S.E.2d 418 (1980)."). Although our Supreme Court has not required that the mandates of N.C. Gen. Stat. §§ 15A-1011 through 1026 be strictly followed before a defendant's counsel be allowed to concede the guilt of his client at trial, *Harbison* and *Matthews* clearly indicate that the trial court must be satisfied that, prior to any admissions of guilt at trial by a defendant's counsel, the defendant must have given knowing and informed consent, and the defendant must be aware of the potential consequences of his decision. *See also State v. Thompson*, 359 N.C. 77, 118-20, 604 S.E.2d 850, 878-79 (2004); *State v. McDowell*, 329 N.C. 363, 385-86, 407 S.E.2d 200, 212-13 (1991).

N.C. Gen. Stat. § 15A-1011(a) states: "A defendant may plead not guilty, guilty, or no contest '(nolo contendere).' A plea may be received only from the defendant himself in open court except [under circumstances not relevant to this case.]" N.C. Gen. Stat. § 15A-1011(a) (2005). N.C. Gen. Stat. § 15A-1022 states in relevant part:

STATE v. MAREADY

[205 N.C. App. 1 (2010)]

[A] superior court judge may not accept a plea of guilty or no contest from the defendant without first addressing him personally and:

    (1) Informing him that he has a right to remain silent and that any statement he makes may be used against him;

    (2) Determining that he understands the nature of the charge;

    (3) Informing him that he has a right to plead not guilty;

    (4) Informing him that by his plea he waives his right to trial by jury and his right to be confronted by the witnesses against him;

    (5) Determining that the defendant, if represented by counsel, is satisfied with his representation;

    (6) Informing him of the maximum possible sentence on the charge for the class of offense for which the defendant is being sentenced, including that possible from consecutive sentences, and of the mandatory minimum sentence, if any, on the charge; and

. . . .

(b) . . . . The judge may not accept a plea of guilty or no contest from a defendant without first determining that the plea is a product of informed choice.

N.C. Gen. Stat. § 15A-1022 (2005).

Subsequent to our Supreme Court's decisions in *Harbison* and *Matthews*, the United States Supreme Court decided *Florida v. Nixon*, 543 U.S. 175, 160 L. Ed. 2d 565 (2004). In *Nixon*, the Supreme Court held that, because of the unique nature of death penalty cases, in certain circumstances involving trial strategy, admission of guilt to an offense at trial by a defendant's counsel without defendant's express consent will not constitute *per se* ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution. *Id.*

To summarize, *in a capital case*, counsel must consider in conjunction both the guilt and penalty-phases in determining how best to proceed. When counsel informs the defendant of the strategy counsel believes to be in the defendant's best interest and the defendant is unresponsive, counsel's strategic choice is not im-

STATE v. MAREADY

[205 N.C. App. 1 (2010)]

peded by any blanket rule demanding the defendant's explicit consent. Instead, if counsel's strategy, given the evidence bearing on the defendant's guilt, satisfies the *Strickland* standard, that is the end of the matter; no tenable claim of ineffective assistance would remain.

*Nixon*, 543 U.S. at 192, 160 L. Ed. 2d at 581 (citations omitted) (emphasis added). The *Nixon* Court further stated that:

*Although such a concession [of guilt by a defendant's attorney] in a run-of-the-mine trial might present a closer question,* the gravity of the potential sentence in a capital trial and the proceeding's two-phase structure vitally affect counsel's strategic calculus. Attorneys representing capital defendants face daunting challenges in developing trial strategies, not least because the defendant's guilt is often clear. Prosecutors are more likely to seek the death penalty, and to refuse to accept a plea to a life sentence, when the evidence is overwhelming and the crime heinous. In such cases, "avoiding execution [may be] the best and only realistic result possible."

*Id.* at 190-91, 160 L. Ed. 2d at 580-81 (citations omitted) (emphasis added). The case before us is not a death penalty case, and the United States Supreme Court has not addressed the specific Sixth Amendment issue presented in the "run-of-the-mine" case before us. *See State v. Allen,* 360 N.C. 297, 315, 626 S.E.2d 271, 285 (2006) (*"See Florida v. Nixon,* 543 U.S. 175, 178 (2004) ('This *capital case* concerns defense counsel's strategic decision to concede, at the guilt phase of the trial, the defendant's commission of murder, and to concentrate the defense on establishing, at the penalty phase, *cause for sparing the defendant's life.*')") (emphasis added); *State v. Simmons,* 2009 Minn. App. Unpub. LEXIS 21, 7 (Minn. Ct. App. Jan. 6, 2009) ("The *Nixon* holding is inapplicable here because this is not a murder case, nor is the death penalty at stake."). We find the case before us distinguishable from *Nixon*, as it is not a death penalty case.[1] Further, subsequent to *Nixon*, the North Carolina Supreme Court has continued to apply the analysis set forth in *Harbison*, even in death penalty

---

1. In the concurring opinion it is argued that the holding in *Nixon* should be applied to non-capital cases. However, as the concurring opinion's mention of the United States Supreme Court's order granting certiorari makes clear, the United States Supreme Court granted certiorari "to resolve an important question of constitutional law, *i.e.*, whether counsel's failure to obtain the defendant's express consent to a strategy of conceding guilt *in a capital trial* automatically renders counsel's performance deficient[.]" *Nixon*, 543 U.S. at 186, 160 L. Ed. 2d at 578 (emphasis added).

cases. *See State v. Goss*, 361 N.C. 610, 651 S.E.2d 867 (2007); *State v. Campbell*, 359 N.C. 644, 617 S.E.2d 1 (2005). Because our Supreme Court has not overruled *Harbison* and, in fact, continues to apply its holding after *Nixon*, we are bound by this precedent.[2]

We are similarly bound by the post-*Nixon* precedent set by our Court. *In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) ("Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court."). Our Court has continued to apply the *Harbison* analysis since the *Nixon* opinion was filed. *See State v. Goode*, —— N.C. App. ——, ——, 677 S.E.2d 507, 510 (2009) (" 'a counsel's admission of his client's guilt, without the client's knowing consent and despite the client's plea of not guilty, constitutes ineffective assistance of counsel.' *State v. Harbison*, 315 N.C. 175, 179, 337 S.E.2d 504, 506-07 (1985). When this occurs, 'the harm is so likely and so apparent that the issue of prejudice need not be addressed.' *Id.* at 180, 337 S.E.2d at 507. We reiterate that '[a] plea decision must be made exclusively by the defendant. . . . Because of the gravity of the consequences, a decision to plead guilty must be made knowingly and voluntarily by the defendant after full appraisal of the consequences.' *Id.*"); *State v. Harrington*, 171 N.C. App. 17, 32, 614 S.E.2d 337, 349 (2005); *State v. Alvarez*, 168 N.C. App. 487, 501, 608 S.E.2d 371, 380 (2005) ("Harbison applies when defense counsel concedes defendant's guilt to either the charged offense or a lesser included offense.") (citation omitted); *State v. Randle*, 167 N.C. App. 547, 550 n.1, 605 S.E.2d 692, 694 n.1 (2004) (after applying the *Harbison* analysis, noting "that the United States Supreme Court has recently discussed whether a concession of guilt by defense counsel constitutes ineffective assistance of counsel *per se*. *See Florida v. Nixon* [.]"); *see also unpublished opinions of our Court State v. Amick*, 2009 N.C. App. LEXIS 388 (Apr. 21,

---

2. The only mention of *Nixon* we find in any opinion of our Supreme Court is in *State v. Al-Bayyinah*, 359 N.C. 741, 757, 616 S.E.2d 500, 512 (2005), where, in *dicta*, our Supreme Court stated: "The United States Supreme Court has found that whether or not a defendant expressly consented to counsel's argument was not dispositive in finding ineffective assistance." *Al-Bayyinah* was filed on the same date as *Campbell*, which applied the *Harbison* analysis. *Goss* was filed after *Al-Bayyinah*. Furthermore, *Al-Bayyinah was* a capital case, and the defendant's objection was to admissions made by his attorney during the sentencing phase of the trial. "[Our Supreme] Court has held that the rule in *State v. Harbison*, 315 N.C. 175, 180, 337 S.E.2d 504, 507-08 (1985), *cert. denied*, 476 U.S. 1123, 90 L. Ed. 2d 672 (1986), precluding defense counsel from admitting a defendant's guilt to the jury without the defendant's consent does not apply to sentencing proceedings." *Al-Bayyinah*, 359 N.C. at 757, 616 S.E.2d at 512 (citation omitted).

2009); *State v. Barlowe*, 2008 N.C. App. LEXIS 599 (Apr. 1, 2008); *State v. Jacobs*, 2008 N.C. App. LEXIS 7 (Jan. 15, 2008); *State v. Graves*, 2007 N.C. App. LEXIS 1962 (Sept. 18, 2007); *State v. Wright*, 2007 N.C. App. LEXIS 1460, 15-18 (July 3, 2007); *State v. Manning*, 2007 N.C. App. LEXIS 390, 6-8 (Feb. 20, 2007); *State v. Verbal*, 2006 N.C. App. LEXIS 865 (Apr. 18, 2006); *State v. Ivey*, 2006 N.C. App. LEXIS 682, 12-14 (Mar. 21, 2006); *State v. Cameron*, 2005 N.C. App. LEXIS 2700 (Dec. 20, 2005); *State v. Sinclair*, 2005 N.C. App. LEXIS 2597 (Dec. 6, 2005); *State v. Cotten*, 2005 N.C. App. LEXIS 1246 (July 5, 2005); *State v. Martin*, 2005 N.C. App. LEXIS 1126, 6-7 (June 7, 2005) ("A defense attorney's specific admission of a defendant's guilt as to the crime for which defendant is being tried, or a lesser included offense, absent the defendant's consent, is a *per se* violation of a defendant's constitutional right to effective assistance of counsel under the Sixth Amendment. *Harbison*, 315 N.C. at 180, 337 S.E.2d at 507."); *State v. Moorefield*, 2005 N.C. App. LEXIS 1102 (June 7, 2005); *State v. Miles*, 2005 N.C. App. LEXIS 1020 (May 17, 2005); *State v. Barr*, 2005 N.C. App. LEXIS 640, 7-8 (Apr. 5, 2005); *State v. Culler*, 2005 N.C. App. LEXIS 105 (Jan. 18, 2005).[3]

In the case before us, Defendant's counsel admitted Defendant's guilt to involuntary manslaughter, and two counts of assault with a deadly weapon. There was no indication at trial that Defendant was asked if he consented to these admissions, or that Defendant had given informed and voluntary consent to these admissions of his guilt.

In its 14 October 2009 order subsequent to the hearing on remand, the trial court made the following relevant findings of fact:

---

3. We disagree with the concurring opinion to the degree that it finds *Nixon* could control, and thus overturn, prior decisions of this Court or our Supreme Court. While this would be the case if *Nixon* held that a decision of our appellate courts (or a practice endorsed by our appellate courts) ran afoul of the United States Constitution, our appellate courts may set procedural and substantive requirements for our trial courts that exceed the constitutional minimum established by the United States Supreme Court. *Mills v. Rogers*, 457 U.S. 291, 300, 73 L. Ed. 2d 16, 23 (1982) ("For purposes of determining actual rights and obligations, however, questions of state law cannot be avoided. Within our federal system the substantive rights provided by the Federal Constitution define only a minimum. State law may recognize liberty interests more extensive than those independently protected by the Federal Constitution. *See Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 7, 12 (1979); *Oregon v. Hass*, 420 U.S. 714, 719 (1975); *see also* Brennan, State Constitutions and the Protection of Individual Rights, 90 Harv. L. Rev. 489 (1977). If so, the broader state protections would define the actual substantive rights possessed by a person living within that State."). As long as *Harbison* sets a standard that meets or exceeds that set forth in *Nixon*, *Nixon* does not overrule *Harbison* in any manner, and *Harbison* controls.

1. This court has had the opportunity to observe the testimony and demeanor of the witnesses and assess their credibility. In this regard the court finds the testimony of [Defendant's counsel] to be credible in all respects.

. . . .

11. Prior to closing arguments, [Defendant's counsel] informed the Defendant that he was going to concentrate his closing arguments on the more serious offenses and admit the lesser offenses. This conversation occurred in the courtroom at the defense counsel table after all the evidence had been heard and immediately prior to the arguments.

12. [Defendant's counsel] informed the Defendant that he believed the closing argument strategy was in the best interest of the Defendant.

13. Defendant raised no questions and did not express any objections to [his counsel] regarding [his counsel's] closing argument strategy prior to the argument being made.

14. After the closing argument the Defendant had no questions and did not raise any objections to [his counsel] or the court about the concessions that were made in the closing argument.

15. After the closing arguments, and outside the presence of the jury, counsel for the State requested that the trial judge conduct an inquiry with the Defendant regarding the concessions.

16. The trial judge asked the Defendant if he agreed to the concessions and he stated "Yes, sir."

17. Defendant expressed no objections to [his counsel] about the concessions while the trial judge made the inquiry of the Defendant.

18. At no time during, or after, the trial court's inquiry of the Defendant did the Defendant express to [his counsel] that he did not understand what the trial court was asking him.

. . . .

21. At no time during the sentencing proceeding did the Defendant express any questions or objections to the concessions made by his counsel in the closing arguments.

These findings are supported by substantial evidence presented at the hearing, except finding sixteen, which stated: "The trial judge

asked the Defendant if he agreed to the concessions and he stated 'Yes, sir.' " Finding sixteen may be misleading, as Defendant only responded "Yes, sir[]" when asked at trial if he had agreed to concede guilt to the charges of DWI, reckless driving, DWLR, and misdemeanor possession of stolen goods. Defendant then volunteered that he also conceded guilt to misdemeanor larceny. Defendant never agreed at trial that he conceded guilt to any of the remaining charges.

Although this Court only ordered the trial court to conduct a *Harbison* hearing and make appropriate findings of fact, the trial court stated that "out of an abundance of caution[,]" it also made six "conclusions of law." Several of these are properly considered findings of fact, and we will treat them as such. *Dunevant v. Dunevant*, 142 N.C. App. 169, 173, 542 S.E.2d 242, 245 (2001) ("[A] pronouncement by the trial court which does not require the employment of legal principles will be treated as a finding of fact, regardless of how it is denominated in the court's order." (citations omitted)).

The trial court made the following determinative "conclusion": "2. Defendant's trial counsel did not obtain the Defendant's explicit consent to the concessions of guilt prior to the closing argument." We hold that the findings of fact made by the trial court at the *Harbison* hearing clearly and unequivocally indicate that Defendant never gave his counsel explicit consent to admit Defendant's guilt to involuntary manslaughter and two counts of assault with a deadly weapon.

> *Harbison* requires more than implicit consent based on an overall trial strategy[.] "[T]he gravity of the consequences demands that the decision to plead guilty remain in the defendant's hands. When counsel admits his client's guilt without first obtaining the client's consent, the client's rights to a fair trial and to put the State to the burden of proof are completely swept away. The practical effect is the same as if counsel had entered a plea of guilty without the client's consent. Counsel in such situations denies the client's right to have the issue of guilt or innocence decided by a jury." *Harbison*, 315 N.C. at 180, 337 S.E.2d at 507.

*Matthews*, 358 N.C. at 108-09, 591 S.E.2d at 540. Therefore, though we do not doubt that Defendant's counsel was acting in a manner he believed to be the best trial strategy for Defendant, because Defendant's counsel failed to obtain Defendant's express consent before admitting Defendant's guilt to three charges before the jury, the rule set forth in *Harbison* and *Matthews* was violated. These admissions

of Defendant's counsel to the jury thus constituted *per se* ineffective assistance of counsel.

Because we hold that Defendant's counsel was *per se* ineffective for admitting Defendant's guilt to two counts of assault with a deadly weapon and one count of involuntary manslaughter, a lesser included offense of second-degree murder, without obtaining Defendant's consent, we must vacate those judgments and grant Defendant's request for a new trial on counts 05 CRS 004158, 05 CRS 004159, and 05 CRS 042094.[4] Because we do not vacate all of Defendant's convictions, we address Defendant's remaining arguments.

II.

[2] Defendant further argues that he received ineffective assistance of counsel "because his trial attorney failed to object to inadmissible State evidence, improper jury instructions, and unconstitutional entry of judgment." We disagree.

In order to prove ineffective assistance of counsel, a

defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693 (1984); *see also State v. Lawson*, 159 N.C. App. 534, 543, 583 S.E.2d 354, 360 (2003). Concerning the second prong of the *Strickland* test, Defendant's argument is as follows:

---

4. In his supplemental brief, Defendant argues that he should be awarded a new trial on all counts. Defendant did not make this argument in his initial brief, and our remand was in response to, and limited by, the relief requested by Defendant in his initial brief. The only issue before the trial court on remand was whether Defendant had provided his counsel with informed consent to admit guilt to the two charges of assault with a deadly weapon and the single charge of involuntary manslaughter. We therefore make no determination concerning the adequacy of Defendant's admissions to these other charges. Defendant's attempt, through his supplemental brief, to change his argument on appeal, and the relief requested, is improper. We do not address Defendant's new arguments.

STATE v. MAREADY

[205 N.C. App. 1 (2010)]

> [T]he question of prejudice is still open. If on appeal this Court refuses to review [D]efendant's appellate arguments or applies the harsh "plain error" test to deny them on the ground they are not preserved for normal appellate review by virtue of counsel's failure to object, counsel's deficient performance will have been prejudicial.

Defendant makes no argument that any of the errors Defendant attributes to his counsel in this portion of his brief deprived him of a fair trial. Defendant does not make a prejudice argument, but a conclusory statement, for which Defendant offers no factual or legal support. "Issues . . . in support of which no reason or argument is stated, will be taken as abandoned." N.C.R. App. P. 28(b)(6). "The body of the argument and the statement of applicable standard(s) of review shall contain citations of the authorities upon which the appellant relies." *Id.* This argument has been abandoned. *Id.*; *Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co.*, 362 N.C. 191, 200, 657 S.E.2d 361, 367 (2008).

### III.

[3] In Defendant's eighth argument, he contends the trial court committed prejudicial error in its instruction on the intent element for the three charges of assault with a deadly weapon. We agree.

During the trial court's charge to the jury, it instructed the jury, *inter alia*, that, in order to convict Defendant of assault with a deadly weapon inflicting serious injury, the jury had to determine beyond a reasonable doubt that Defendant "assaulted the victim by intentionally and without justification or excuse, by using [Defendant's vehicle to cause] an auto collision in which [the victim was seriously injured]." After the trial court had instructed the jury on all charges, and the jury began its deliberation, the jury sent the trial court a note asking the trial court to re-read certain instructions, including the instruction for assault with a deadly weapon inflicting serious injury, which the trial court did. Subsequently, the jury sent the trial court another note which read: "In the definition of assault there's an issue with the word 'intent.' Can this be interpreted strictly only as absolutely <u>intended</u> . . . to hit the other cars or can this be interpreted as the sum total of the actions caused the collision and this implies [intent]?" The trial court brought out the jury, read the question back to the jury, and then stated: "The answer is, the latter portion of your question." "It can be interpreted as the sum total of the actions caused the collision and this implies intent." The jury then

found Defendant guilty of assault with a deadly weapon inflicting serious injury.

We hold that, in answering the jury's question involving the meaning of intent, the trial court allowed the jury to convict Defendant based upon an improperly broad definition of intent. In order for a jury to convict a defendant of assault with a deadly weapon inflicting serious injury, it must find that it was the defendant's actual intent to strike the victim with his vehicle, or that the defendant acted with culpable negligence from which intent may be implied. *State v. Jones*, 353 N.C. 159, 164-65, 538 S.E.2d 917, 922-93 (2000) ("Thus, a driver who operates a motor vehicle in a manner such that it constitutes a deadly weapon, thereby proximately causing serious injury to another, may be convicted of AWDWISI provided there is either an actual intent to inflict injury or culpable or criminal negligence from which such intent may be implied."). In the present case, the trial court's answer to the jury's question could have allowed the jury to convict Defendant without a finding of either actual intent or culpable negligence. Because the trial court's instruction allowed the jury to convict Defendant of assault with a deadly weapon inflicting serious injury without a finding of the requisite intent, we must assume prejudice. *State v. Weston*, 273 N.C. 275, 283, 159 S.E.2d 883, 888 (1968).

We note that a determination by a jury that a defendant was driving while impaired, pursuant to N.C. Gen. Stat. § 20-138.1, can provide the requisite finding of culpable negligence. *Jones*, 353 N.C. at 165, 538 S.E.2d at 923. However, the trial court did not instruct the jury that it could find the requisite culpable negligence by making a determination that Defendant was driving while impaired. We further note that Defendant contends that the two convictions for misdemeanor assault with a deadly weapon should be overturned for the same erroneous instruction on intent. We agree, and so hold, though this holding will only be relevant if our holding above concerning the *Harbison* errors is overturned. We overturn Defendant's conviction for assault with a deadly weapon inflicting serious injury and remand for a new trial on count 05 CRS 04160.

IV.

[4] In Defendant's third argument, he contends the trial court committed plain error by admitting opinion testimony from State's witnesses without the witnesses first being admitted at trial as experts. We disagree.

The State called two police officers to testify concerning their opinions of how the accident occurred. These officers did not witness the accident, but gave their opinions indicating Defendant was at fault based upon their examination of the scene of the accident. The officers were not proffered as experts in accident reconstruction. This Court has held that opinion testimony of this kind is incompetent. *Seay v. Snyder*, 181 N.C. App. 248, 257-58, 638 S.E.2d 584, 590-91 (2007); *see also Hughes v. Vestal*, 264 N.C. 500, 503-07, 142 S.E.2d 361, 364-66 (1965). Defendant did not object to the testimony of the officers at trial, and thus waived regular review on appeal. *State v. Valentine*, 357 N.C. 512, 525, 591 S.E.2d 846, 856-57 (2003). Defendant does, however, expressly argue plain error on appeal, thus preserving the argument for plain error review. *State v. Dennison*, 359 N.C. 312, 312-13, 608 S.E.2d 756, 757 (2005).

We hold that the admission of the officers' opinion testimony concerning their purported accident reconstruction conclusions was error. Accident reconstruction opinion testimony may only be admitted by experts, who have proven to the trial court's satisfaction that they have a superior ability to form conclusions based upon the evidence gathered from the scene of the accident than does the jury. *Hughes v. Vestal*, 264 N.C. at 503-07, 142 S.E.2d at 364-66; *Seay*, 181 N.C. App. at 257-58, 638 S.E.2d at 590-91. However, we hold that Defendant fails in his burden of proving plain error. First, not only did Defendant fail to object to the opinion testimony during the State's direct examination of the officers, he elicited much of the same testimony on cross-examination. Had Defendant objected, his subsequent questioning of the State's witnesses on cross-examination would not have necessarily constituted a waiver of his prior objections for the purposes of appeal. *State v. Wells*, 52 N.C. App. 311, 314-15, 278 S.E.2d 527, 529-30 (1981). However, Defendant failed to object and then elicited the same testimony on cross-examination. Therefore, there is nothing in the record to indicate to us that this line of questioning was not one Defendant wished to pursue at trial. Furthermore, by failing to object, Defendant deprived the State of the opportunity to correct the error, and to proffer its witnesses as experts. We hold that Defendant has failed to prove plain error on the facts before us.

V.

[5] In Defendant's fourth argument, he contends that the trial court committed reversible error by admitting an officer's testimony that Defendant "had just gotten out of jail recently." We disagree.

We first note that our Supreme Court referenced this testimony in *Maready II*. In support of its holding that the trial court's intent instruction, which allowed Defendant's prior convictions to be considered by the jury as proof of intent did not amount to prejudicial error, our Supreme Court said:

> Irrespective of defendant's prior convictions, the State presented such significant evidence of intent with regard to all the charges against defendant that we cannot say the challenged instruction probably affected the jury's verdicts. We call particular attention to the testimony regarding defendant's own statements on the day of the incident. During an earlier encounter with another deputy several hours before the wreck, *defendant stated he had recently been released from jail*, that his driver's license was suspended, and that "he didn't drive." Later, during the investigatory traffic stop, defendant admitted he had been drinking. Then, as he fled the scene of the stop, defendant "said that he was not going back to the penitentiary." These statements strongly demonstrate defendant's knowledge and understanding that he was driving illegally and was not going to stop.

*Maready II*, 362 N.C. 614, 621, 669 S.E.2d 564, 568-69 (2008) (emphasis added). Because our Supreme Court used this testimony in support of its holding in this matter, we conclude our Supreme Court determined it was properly admitted. Even assuming *arguendo* the testimony was improper, we hold Defendant has failed in his burden of showing "prejudice such that a different result [at trial] would have been likely had the evidence been excluded." *State v. Barber*, 93 N.C. App. 42, 45, 376 S.E.2d 497, 499 (1989). Defendant's driving record, which was admitted at trial, shows that Defendant had been sentenced to twelve months for DWI on 27 August 2004. The traffic crash occurred on 12 February 2005. Evidence that Defendant had recently "gotten out of jail" was already before the jury. This argument is without merit.

## VI.

In Defendant's sixth argument, he contends that the trial court committed prejudicial error in allowing the State to allude to the trial court's ruling concerning reasonable suspicion for the initial stop of Defendant. We disagree.

First, our Supreme Court has already determined that the initial stop of Defendant was supported by reasonable suspicion. *Maready II*, 362 N.C. at 620, 669 S.E.2d at 568. Second, assuming *arguendo* the

State's argument was improper, upon a thorough review of the record, we hold that Defendant has failed to "show that there is a reasonable possibility a different result would have been reached had the error not occurred. N.C.G.S. § 15A-1443(a) (1999)." *State v. Allen*, 353 N.C. 504, 509, 546 S.E.2d 372, 375 (2001). This argument is without merit.

## VII.

[6] In Defendant's seventh argument, he contends that the trial court committed plain error in instructing the jury on the charge of "operating a vehicle to elude arrest." We disagree.

The jury was correctly instructed on the charge of operating a vehicle to elude arrest. The jury then sent a request for re-instruction on the charge, specifically asking for re-instruction on the third element of the charge—that Defendant was fleeing or attempting to elude a law enforcement officer who was in the lawful performance of his duties. The trial court decided to re-instruct the jury on all four elements of the charge, and again correctly instructed the jury on the charge. The trial court repeated the correct charge in condensed form, then repeated it again, but did not include reference to the fourth element. Based on the facts of the case before it, the trial court's instruction concerning the fourth element required the jury to find two of the following beyond a reasonable doubt:

> gross impairment of [Defendant's] faculties while driving, due to the consumption of an impairing substance; a blood alcohol level of 0.14 or more within a relevant time after driving; reckless driving; negligent driving leading to an accident, causing . . . property damage in excess of $1,000 or personal injury; [or] driving while license revoked.

*See* N.C. Gen. Stat. § 20-141.5 (2005). In light of the jury's request to be re-instructed on only the third element of the charge, and the trial court's correct instruction on that element three times in close succession, and because Defendant admitted guilt at trial to at least two of the factors—reckless driving, and driving while license revoked—we do not find that the trial court's failure to include the fourth element in one of those three instructions amounts to plain error. Defendant has failed in his burden to prove any error was " 'so basic, so prejudicial, so lacking in its elements that justice cannot have been done[.]' " *State v. Wood*, 174 N.C. App. 790, 793, 622 S.E.2d 120, 123 (2005) (citations omitted).

## VIII.

**[7]** In Defendant's ninth argument, he contends that his convictions for DWI, DWLR, and reckless driving "must be vacated because entry of judgment in them and in the murder, operating a vehicle, and felony assault cases violates double jeopardy." Defendant has not preserved this argument for appellate review.

> The Double Jeopardy Clause plays only a limited role in deciding whether cumulative punishments may be imposed under different statutes at a single criminal proceeding—that role being only to prevent the sentencing court from prescribing greater punishments than the legislature intended. We further reiterate that where our legislature "specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct under *Blockburger* [*v. United States*, 284 U.S. 299, 304, 76 L. Ed. 306, 309 (1932)], a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial." *Missouri v. Hunter*, 459 U.S. at 368-69, 74 L. Ed. 2d at 544. *See State v. Price*, 313 N.C. 297, 327 S.E.2d 863 (1985).

*State v. Gardner*, 315 N.C. 444, 460-61, 340 S.E.2d 701, 712 (1986). Because the case before us involves convictions obtained at a single criminal proceeding, the outcome of Defendant's argument turns on whether our General Assembly intended to authorize cumulative punishment for the relevant statutes. Defendant states in his brief: "[O]ur Legislature did not intend for multiple punishment in this situation." This is not an argument, but a conclusory statement for which Defendant offers no factual or legal support. "Issues . . . in support of which no reason or argument is stated, will be taken as abandoned." N.C.R. App. P. 28(b)(6). "The body of the argument and the statement of applicable standard(s) of review shall contain citations of the authorities upon which the appellant relies." *Id.* This argument has been abandoned. *Id.*; *Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co.*, 362 N.C. 191, 200, 657 S.E.2d 361, 367 (2008).

No prejudicial error in part, new trial in part.

Judge ELMORE concurs.

Judge ERVIN concurs in part and concurs in the result in part by separate opinion.

ERVIN, Judge, concurring in part and concurring in the result in part.

Although I concur in the Court's conclusion that defendant is entitled to a new trial in the cases in which he was convicted of second degree murder based on his trial counsel's unconsented-to concession of guilt to involuntary manslaughter and in the remainder of the Court's opinion, I am unable to fully join in the logic by which the Court reaches its decision with respect to the "concession of guilt" issue. As a result, I concur in part and concur in the result in part.

As the record clearly shows, defendant's trial counsel conceded his client's guilt of involuntary manslaughter, two counts of assault with a deadly weapon, driving while impaired, driving while license revoked, misdemeanor larceny, and misdemeanor possession of stolen property in his final argument to the jury.[5] In making these concessions, defendant's trial counsel argued that he did "not contest" the misdemeanor assault charges, so "you can go and make your decisions accordingly." After arguing that the jury should not convict defendant of assault with a deadly weapon with intent to kill inflicting serious injury, defendant's trial counsel discussed the second degree murder charge and argued that "it's not murder," "[i]t's Involuntary Manslaughter."[6] As a result, defendant's trial counsel clearly conceded defendant's guilt of involuntary manslaughter and both counts of assault with a deadly weapon in his concluding argument to the jury.

After all of the arguments of counsel had been completed, the prosecutor noted that "there were several charges that were either conceded or not contested by the defendant in the closing" and asked the trial court to inquire as to whether defendant had consented to those concessions. At that point, the following proceedings occurred:

THE COURT:        [Defense Counsel], I believe you did concede DWI, Driving While License Revoked, Reckless Driving, and Misdemeanor Possession of Stolen Goods; is that correct?

---

5. As the Court notes, an extensive discussion of the facts of this case can be found in the earlier opinions of this Court and the Supreme Court in *State v. Maready*, 188 N.C. App. 169, 654 S.E.2d 769 (2008), and *State v. Maready*, 362 N.C. 614, 669 S.E.2d 564 (2008).

6. In addition, defendant's trial counsel suggested at one point in his summation that defendant was also guilty of misdemeanor death by vehicle, another lesser included offense of second degree murder.

STATE v. MAREADY

[205 N.C. App. 1 (2010)]

[DEF COUNSEL]:      That is correct, Your Honor.

THE COURT:      So that's on the record.

[PROSECUTOR]:      Well, I think, Your Honor, what should be on the record is the defendant that he agreed for his attorney to do that.

THE COURT:      Yes. Have the defendant stand up, please. Stand up here, Mr. Maready. Have you agreed that your attorney concede the—your guilt to Driving While Impaired, Driving While License Revoked, Reckless Driving, and Misdemeanor Possession of Stolen Goods?

THE DEFENDANT: Yes, sir.

THE COURT:      All right, thank you very much.

[PROSECUTOR]:      Your Honor, I think there may actually be more one. I think—

THE DEFENDANT: Misdemeanor Larceny.

[PROSECUTOR]:      Misdemeanor Larceny. And there might even be the Involuntary Manslaughter, I believe, at one point. Maybe I misunderstood that part of the argument, but I thought when he was arguing—

THE COURT:      There was also Misdemeanor Larceny, that's correct.

[DEF COUNSEL]:      Your Honor, I've argued that's what he should be convicted of.

[PROSECUTOR]:      Okay. Never mind then. I won't go there.

Since the issue of the extent, if any, to which defendant consented to the concessions of guilt made by his trial counsel during closing arguments was not fully explored during defendant's original trial, we remanded this case to the Durham County Superior Court for a further exploration of the consent issue.

As requested, the remand court took evidence and made findings of fact concerning the extent, if any, to which defendant and his trial counsel discussed the manner in which defendant's trial counsel would argue defendant's case to the jury and the extent to which

defendant consented to the concessions which were made during his trial counsel's closing argument. On the basis of the evidence received at this remand hearing, the trial court made the following findings of fact:

5. [Defendant's trial counsel] met with the Defendant on numerous occasions for trial preparation.

6. There were numerous discussions and plea negotiations between the State and defense.

7. All plea negotiations failed and the matter was tried in April of 2006.

8. [Defendant's trial counsel's] primary trial strategy and goal was to focus on reducing the second degree murder offense to some lesser offense.

9. The Defendant did not have any objections or questions about the trial strategy when it was discussed with [his trial counsel].

10. Faced with the overwhelming evidence of guilt to the lesser offenses, [Defendant's trial counsel] sought to avoid offending the sensibilities of the jurors by denying that the lesser offenses occurred.

11. Prior to closing arguments, [Defendant's trial counsel] informed the Defendant that he was going to concentrate his closing argument on the more serious offenses and admit the lesser offenses. This conversation occurred in the courtroom at the defense table after all the evidence had been heard and immediately prior to the arguments.

12. [Defendant's trial counsel] informed the Defendant that he believed that the closing argument strategy was in the best interest of the Defendant.

13. The Defendant raised no questions and did not express any objections to [Defendant's trial counsel] regarding [Defendant's trial counsel's] closing argument strategy prior to the argument being made.

14. After the closing argument the Defendant had no questions and did not raise any objections to [Defendant's trial counsel] or the court about the concessions that were made in the closing argument.

15. After the closing arguments and outside the presence of the jury, counsel for the State requested that the trial judge conduct an inquiry with the Defendant regarding the concessions.

16. The trial judge asked the Defendant if he agreed to the concessions and he stated "Yes, sir."

17. The Defendant expressed no objections to [Defendant's trial counsel] about the concessions while the trial judge made inquiry of the Defendant.

18. At no time during, or after, the trial court's inquiry of the Defendant did the Defendant express to [his trial counsel] that he did not understand what the trial court was asking him.

19. After the jury returned verdicts of guilty to second degree murder; misdemeanor larceny; misdemeanor possession of stolen goods; assault with a deadly weapon inflicting serious injury; two counts of assault with a deadly weapon; driving while impaired; driving while license revoked; careless and reckless driving; and felony eluding arrest, the court conducted a sentencing hearing.

20. At the sentencing hearing that was held on April 24, 2006 the Defendant executed a Transcript of Plea form in which he admitted aggravating and grossly aggravating factors which related to the Driving While Impaired conviction; that he was satisfied with his attorney and his legal services; and that he did not have any questions about anything that had just been said or about anything else involving his case.

21. At no time during the sentencing proceeding did the Defendant express any questions or objections to the concessions made by his counsel in the closing arguments.

In essence, the remand court found that, while defendant did not explicitly consent to all of the concessions that his trial counsel made during closing arguments, he was aware of and in general agreement with the strategy that his trial counsel followed throughout the trial, including the strategy that his trial counsel employed during closing arguments. Based on this factual information, we are now required to determine whether the concessions made by defendant's trial counsel during his final argument to the jury constituted ineffective assistance of counsel.

The Supreme Court has clearly indicated that the standards for determining whether a criminal defendant received constitutionally deficient representation are the same under both the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 19 and 23 of the North Carolina Constitution. *State v. Braswell,* 312 N.C. 553, 562, 324 S.E.2d 241, 248 (1985) (stating that, while the defendant has "perhaps suggest[ed] that the North Carolina test for ineffective assistance of counsel is separate from and less stringent than the standards for ineffective assistance of counsel under the federal constitution, as interpreted by *Strickland v. Washington,*" 466 U.S. 668, 80 L. Ed. 2d 674 (1984), "[w]e disagree"). For that reason, despite the fact that this Court and the Supreme Court generally address ineffective assistance of counsel claims in Sixth Amendment terms, I believe that *Braswell* clearly indicates that such discussions implicate both federal and state constitutional protections.

At the time that the Supreme Court initially addressed the constitutional implications of a decision by a criminal defendant's trial counsel to concede guilt of one or more of the offenses with which that defendant had been charged or of a lesser included offense, the United States Supreme Court had not had the occasion to directly address that issue. As a result, when it decided *State v. Harbison,* 315 N.C. 175, 337 S.E.2d 504 (1985), *cert. denied,* 476 U.S. 1123, 90 L. Ed. 2d 672-73 (1986), the Supreme Court was writing on a relatively clean slate. In that case, the trial court found that defendant's trial counsel argued to the jury in a non-capital first degree murder case that:

> Ladies and Gentlemen of the Jury, I know some of you and have had dealings with some of you. I know that you want to leave here with a clear [conscience] and I want to leave here also with a clear [conscience]. I have my opinion as to what happened on that April night, and I don't feel that [the defendant] should be found innocent. I think he should do some time to think about what he has done. I think you should find him guilty of manslaughter and not first degree.

*Harbison,* 315 N.C. at 177-78, 337 S.E.2d at 506. In analyzing the defendant's ineffectiveness claim, the Supreme Court stated that the relevant test was the two-part inquiry enunciated in *Braswell* and *Strickland.* However, the Supreme Court pointed out that "there exist 'circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified,' "

such as cases in which " 'counsel was either totally absent or prevented from assisting the accused during a critical stage of the proceeding.' " *Harbison*, 315 N.C. at 179, 337 S.E.2d at 507 (quoting *United States v. Cronic*, 466 U.S. 648, 659, ftn. 25, 80 L. Ed. 2d 657, 667, 668, ftn. 25 (1984).[7] For that reason, the Supreme Court concluded that, "when counsel to the surprise of his client admits his client's guilt, the harm is so likely and so apparent that the issue of prejudice need not be addressed." *Harbison*, 315 N.C. at 180, 337 S.E.2d at 507. In addition, the Supreme Court noted that "[a] plea decision must be made exclusively by the defendant" and that, "[b]ecause of the gravity of the consequences, a decision to plead guilty must be made knowingly and voluntarily by the defendant after full appraisal of the consequences." *Harbison*, 315 N.C. at 180, 337 S.E.2d at 507. Thus, the Supreme Court held that, "[w]hen counsel admits his client's guilt without first obtaining the client's consent," "[t]he practical effect is the same as if counsel had entered a plea of guilty without the client's consent." *Harbison*, 315 N.C. at 180, 337 S.E.2d at 507. As a result, for these reasons, the Supreme Court held "that ineffective assistance of counsel, *per se* in violation of the Sixth Amendment, has been established in every criminal case in which the defendant's counsel admits the defendant's guilt to the jury without the defendant's consent." *Harbison*, 315 N.C. at 180, 337 S.E.2d at 507-08.

Almost two decades later, the United States Supreme Court addressed the Sixth and Fourteenth Amendment implications of a decision by a criminal defendant's trial counsel to admit his client's guilt of a criminal offense without the client's express consent in *Florida v. Nixon*, 543 U.S. 175, 160 L. Ed. 2d 565 (2004). In *Nixon*, the defendant's trial counsel was faced with the daunting task of representing a defendant in a capital case in which the prosecution had a very strong case on the issue of guilt, leading the defendant's trial counsel to conclude that his only hope of saving his client's life was to concede his client's guilt of first degree murder and to focus his efforts on the capital sentencing proceeding. Although the defendant's trial counsel attempted to discuss this proposed strategy with his client on several occasions, the defendant would neither object nor consent to the recommended approach. As a result, the defendant's

---

7. As examples, the *Harbison* Court cited situations such as when the defendant's trial counsel is not allowed to make a closing argument, *Geders v. United States*, 425 U.S. 80, 47 L. Ed. 2d 592 (1975), or when the defendant's counsel labors under an actual conflict of interest. *Cuyler v. Sullivan*, 446 U.S. 335, 64 L. Ed. 2d 333 (1980). *Harbison*, 315 N.C. at 179, 337 S.E.2d at 507.

trial counsel followed his preferred strategy at trial in an ultimately unsuccessful attempt to save the defendant's life. After the Florida Supreme Court granted the defendant a new trial on the grounds that the defendant's trial counsel had provided him with constitutionally deficient representation in reliance on logic similar to that employed in *Harbison*,[8] *Nixon v. State*, 857 So. 2d 172 (Fla. 2003), *cert. granted*, 540 U.S. 1217, 158 L. Ed. 2d 152, *rev'd and remanded*, 543 U.S. 175, 160 L. Ed. 2d 565 (2004), the United States Supreme Court granted *certiorari* "to resolve an important question of constitutional law, *i.e.*, whether counsel's failure to obtain the defendant's express consent to a strategy of conceding guilt in a capital trial automatically renders counsel's performance deficient, and whether counsel's effectiveness should be evaluated under *Cronic* or *Strickland*." *Nixon*, 543 U.S. at 186, 160 L. Ed. 2d at 578.[9]

8. In fact, the Florida Supreme Court cited *Harbison* in deciding to remand the defendant's case for an evidentiary hearing on the consent issue in *Nixon v. State*, 758 So. 2d 618, 625 (2000), *overruled by Philmore v. State*, 937 So. 2d 578.

9. The Court treats *Nixon* as irrelevant to the present case on the grounds, at least in part, that the principles enunciated in that decision are only applicable in capital cases. Although there is no question but that *Nixon* itself was a capital case, that the capital nature of the case itself was referenced in the question posed by the United States Supreme Court in granting *certiorari*, and that the factual context against which the United States Supreme Court addressed the issues under consideration there affected the Court's analysis, I do not believe that the principles discussed in *Nixon* have no application outside the capital context. In fact, as the majority notes, *Nixon* discusses the fact that "such a concession in a run-of-the-mine trial might present a closer question" than it does in the capital context. *Nixon*, 543 U.S. 190, 160 L. Ed. 2d at 580. In addition, the United States Supreme Court has clearly held that the same principles govern ineffectiveness claims in capital and non-capital cases. *Strickland*, 466 U.S. at 686-87, 80 L. Ed. 2d at 693. Finally, *Nixon* has been cited repeatedly in non-capital cases, see *Valenzuela v. United States*, 217 Fed. App. 486, 490 (2007) (citing *Nixon* in § 2255 proceeding arising from federal drug conspiracy case); *United States v. Thomas*, 417 F.3d 1053, 1057-58, *cert. denied*, 546 U.S. 1121, 163 L. Ed. 2d 909 (2006) (9th Cir. 2005) (citing *Nixon* in § 2255 proceeding arising from federal bank robbery convictions); *D'Agostino v. Budge*, 163 Fed. Appx. 456, 457 (9th Cir. 2005), *cert. denied*, 547 U.S. 148, 164 L. Ed. 2d 815 (2006) (citing *Nixon* in § 2254 proceeding arising from state larceny and arson charges); *Pennsylvania v. Cousin*, 585 Pa. 287, 305-06, 888 A.2d 710, 721-22 (2005) (stating that, while *Nixon* was a capital case, "it does not follow that the Court's holding in that case was meant to apply only in death penalty cases, particularly as the specific justification for the attorney's chosen strategy was not central to the [*Nixon*] Court's conclusion that counsel's course of action should be tested by reference to the actual prejudice standard of *Strickland*"), although other courts have reached a conclusion consistent with that reached by the Court here. See *People v. Bergerud*, 223 P.3d 686, 699-700, ftn. 11 (2010) (finding *Nixon* inapplicable in a somewhat different factual situation because "the death penalty has been abandoned by the prosecution and the defendant *explicitly* objected to counsel's actions on his behalf"). As a result, I am not persuaded that *Nixon* is only relevant in the capital context.

At the beginning of its analysis, the United States Supreme Court pointed out that "[a]n attorney undoubtedly has a duty to consult with the client regarding 'important decisions,' including questions of overarching defense strategy;" *Nixon*, 543 U.S. at 187, 160 L. Ed. 2d at 578 (quoting *Strickland*, 466 U.S. at 688, 80 L. Ed. 2d at 674; that counsel's obligation to consult "does not require counsel to obtain the defendant's consent to 'every tactical decision;'" *Nixon*, 543 U.S. at 187, 160 L. Ed. 2d at 578 (quoting *Taylor v. Illinois*, 484 U.S. 400, 417-18, 98 L. Ed. 2d 798, 816 (1988); and that "certain decisions regarding the exercise or waiver of basic trial rights are of such moment that they cannot be made for the defendant by a surrogate," including the right to plead guilty, waive a jury trial, testify on his or her own behalf, or note an appeal. *Nixon*, 543 U.S. at 187, 160 L. Ed. 2d at 578. After rejecting the equation between a concession of guilt and a guilty plea enunciated in *Harbison, Nixon*, 543 U.S. 189, 160 L. Ed. 2d at 579, and concluding that the defendant's trial counsel's "concession of [the defendant's] guilt does not rank as a 'fail[ure] to function in any meaningful sense as the Government's adversary," *Nixon*, 543 U.S. at 190, 160 L. Ed. 2d at 580, the United States Supreme Court concluded that, "in a capital case, counsel must consider in conjunction both the guilt and penalty-phases in determining how best to proceed;" that "[w]hen counsel informs the defendant of the strategy counsel believes to be in the defendant's best interest and the defendant is unresponsive, counsel's strategic choice is not impeded by any blanket rule demanding the defendant's explicit consent;" and that, "[i]nstead, if counsel's strategy, given the evidence bearing on the defendant's guilt, satisfies the *Strickland* standard, that is the end of the matter," since "no tenable claim of ineffective assistance of counsel would remain." *Nixon*, 543 U.S. at 192, 160 L. Ed. 2d at 581. As a result, *Nixon* suggests that the Sixth and Fourteenth Amendments require a criminal defendant's trial counsel to consult with him or her regarding matters of "overarching defense strategy," to implement such strategic decisions upon which they are in agreement, to abide by the client's wishes in instances in which they are unable to agree,[10] and to adopt whatever approach he

---

10. "The full impact of *Nixon* upon the legal guarantee of effective assistance of counsel is still unclear," S Scudder, "Comment: With Friends Like You, Who Needs a Jury? A Response to the Legitimization of Conceding a Client's Guilt," 29 *Campbell Law Review* 137, 164 (2006). However, at least two principal approaches appear to have developed in the decisions that have been rendered in reliance on *Nixon*. On the one hand, a number of decisions have applied the traditional *Strickland* standard to concession of guilt issues without giving any apparent weight to the extent to which the defendant's trial counsel consulted with the defendant. *See United States v. Jones*,

or she reasonably deems appropriate in the event that the defendant refuses to engage in such strategic discussions.

At this point, contrary to the Court, I do not believe that either this Court or the Supreme Court has directly and clearly addressed the extent, if any, to which *Nixon* has altered the approach that the North Carolina courts have traditionally taken to the concession of guilt issue.[11] To be sure, as the Court notes, this issue has been alluded to on several occasions in opinions of the Supreme Court and this Court. For example, in *State v. Al-Bayyinah*, 359 N.C. 741, 757, 616 S.E.2d 500, 512 (2005), *cert. denied*, 547 U.S. 1076, 165 L. Ed. 23 528 (2006), the Supreme Court stated that "the United States Supreme Court has found that whether or not a defendant expressly consented to counsel's argument was not dispositive in finding ineffective assistance," citing *Nixon*, while "this Court has held that the rule in" *Harbison* "precluding defense counsel from admitting a defendant's guilt to the jury without the defendant's consent does not apply to sentencing hearings." *See State v. Walls*, 342 N.C. 1, 57, 463 S.E.2d 738, 768 (1995), *cert. denied*, 517 U.S. 1197, 134 L. Ed. 2d 794 (1996). Similarly, we noted in *State v. Randle*, 167 N.C. App. 547, 550, ftn. 1, 605 S.E.2d 692, 694, ftn. 1 (2004), in the course of addressing a *Harbison* claim, that "the United States Supreme Court has recently discussed whether a concession of guilt by defense counsel consti-

---

482 F.3d 60, 76-78 (5th Cir. 2006); *Cousin*, 585 Pa. at 308, 888 A.2d at 724. Conversely, other courts have emphasized *Nixon's* reference to the "duty to consult" language found in *Strickland* and have adopted an approach similar to that set forth in the text. *See Valenzuela*, 217 Fed. Appx. at 490 (stating that the duty to consult "may include obtaining a client's consent to certain strategies" while noting that "Valenzuela has not introduced any evidence that Gold did not seek Valenzuela's consent or did not consult with Valenzuela about defense strategy"); *Cooke v. State*, 977 A.2d 803, 840-53 (Del. 2009) (holding, in an opinion couched as a finding that *Nixon* was inapplicable, that trial counsel were ineffective for pursuing a guilty but mentally ill verdict in opposition to defendant's insistence upon the pursuit of a not guilty verdict). The United States Supreme Court has yet to address the manner in which *Nixon* should be applied in cases, such as this one, in which a defendant's trial counsel failed to consult with the defendant about the use of a concession of guilt as a trial strategy. However, given the emphasis upon the duty to consult found in *Nixon* and the Court's emphasis upon the defendant's failure to respond to his trial counsel's efforts to obtain consent in its analysis in *Nixon*, I believe that the better reading of *Nixon* is one that requires a defendant's trial counsel to consult with the defendant about the use of a concession of guilt strategy and to make reasonable efforts to obtain the defendant's consent.

11. I feel compelled to mention and discuss *Nixon* because both the remand court and the State in its supplemental brief appear to rely on *Nixon* in urging us to find that no Sixth Amendment violation occurred in this case and because, once *Nixon* has been introduced into the discussion in this case, I find myself unable to agree with the Court's treatment of that decision.

tutes ineffective assistance of counsel *per se*," citing *Nixon*. Finally, this Court has discussed the interrelationship of *Harbison* and *Nixon* in at least one unpublished opinion. *State v. LeGrand*, 2006 N.C. App. LEXIS 2465 (2006) (noting that *Nixon* was decided after *Harbison* and concluding "that the trial court's failure to document defendant's express consent to defense counsel's admission that he had a prior felony conviction does not require us to find that defense counsel was *per se* ineffective" and "that defense counsel's strategy, to admit to the jury that defendant was guilty of possession of a firearm by a convicted felon, while asserting self-defense, was not unreasonable"). However, to the best of my knowledge, neither this Court nor the Supreme Court has directly addressed and resolved the issue of the continued viability of the "express consent" rule enunciated in *Harbison* in the aftermath of *Nixon*.

After a careful review of the foundational decisions relating to ineffective assistance of counsel issues in this jurisdiction, I am inclined to believe that the test enunciated in *Nixon* has, to the extent that it is inconsistent with the test enunciated in *Harbison*, superseded it.[12] I reach this conclusion primarily because I believe, as the Supreme Court stated in *Braswell*, that there is no difference between the tests to be applied in identifying the presence of ineffective assistance of counsel under the federal and state constitutions in the North Carolina courts. A careful examination of the Supreme Court's opinion in *Harbison* makes it abundantly clear that the Court believed that it was deciding that case under the Sixth and Fourteenth Amendments.[13] The clear implication of the Supreme

12. The Court concludes that, since the Supreme Court and this Court have continued to apply the analysis required by *Harbison* even after the United States Supreme Court decided *Nixon*, we would be violating the fundamental principles that we are bound by the decisions of the Supreme Court, *Cannon v. Miller*, 313 N.C. 324, 327 S.E.2d 888 (1985), and our own prior decisions, *In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989), in the event that we were to conclude that *Nixon* in any way impinged upon *Harbison*. However, since neither the Supreme Court nor this Court has directly addressed the impact of *Nixon* on *Harbison* and since the Supreme Court in *Braswell* clearly indicated that the same ineffectiveness standards applied under both the federal and state constitutions, I do not believe that we are required to ignore *Nixon* for purposes of deciding this case in the event that we were to conclude that it is otherwise relevant.

13. The Court correctly notes that a state may, if it chooses, establish greater protections under its own constitution than are available under the United States Constitution and suggests that *Harbison* reflects such an exercise of state authority. The fundamental problem with this argument is that nothing in *Harbison* or its progeny suggests that the Supreme Court was exercising its authority to act in that manner when it decided *Harbison*. Instead, as I have already noted, *Harbison* was decided under the Sixth and Fourteenth Amendments to the United States Constitution and makes no reference to any provision of the North Carolina Constitution.

Court's decision to adopt a unitary federal-state ineffectiveness standard in *Braswell* is that, when the United States Supreme Court addresses an ineffectiveness issue under the Sixth Amendment, its decision is controlling under both the federal and state constitutions.[14] As a result, since the United States Supreme Court has now addressed the "concession of guilt" issue for Sixth Amendment purposes, I am inclined to believe that the approach to that issue enunciated in *Nixon* is, to the extent that it differs from the approach enunciated in *Harbison*, controlling.[15] However, since *Nixon* emphasizes the need for counsel to consult with his or her client about significant questions of "overarching defense strategy" and since conceding guilt to one or more offenses during final argument is, without question, an exceedingly important strategic question, I do not believe that we need to definitively resolve the issue of whether *Nixon* works a significant change in the analysis required by *Harbison* in order to decide this case.[16]

Aside from the fact that the only "concession of guilt" issues that are properly before us relate to defendant's convictions for second degree murder and assault with a deadly weapon, the record developed at trial demonstrates that defendant expressed consent to his trial counsel's decision to concede guilt to driving while impaired,

14. Such a unitary standard does not, needless to say, apply in all instances involving similar provisions of the federal and state constitutions. *State v. Carter*, 322 N.C. 709, 713, 370 S.E.2d 553, 555 (1988).

15. The case for treating *Nixon* as at least somewhat inconsistent with *Harbison* is particularly persuasive to me given that *Nixon* rejects two of the fundamental propositions on which *Harbison* rests, i.e., that an unconsented-to concession of guilt is tantamount to a plea of guilty and that such a concession of guilt constitutes a failure on the part of defense counsel to perform the required adversarial testing of the prosecutor's case.

16. At this point, in the absence of further guidance from the United States Supreme Court or our Supreme Court, I believe that *Nixon* would allow an attorney to make a tactically justified concession of guilt in the event that his or her client refused to either agree or disagree to his or her request for authorization to make such a concession without fear of being found to be constitutionally ineffective. Beyond that, however, it is not clear to me that *Nixon* requires a dramatic change in existing North Carolina constitutional jurisprudence, given its emphasis upon the importance of attorney-client consultation about crucial strategic issues and the fact that defense counsel are bound by their client's instructions with respect to fundamentally important strategic issues. Since the present case does not appear to involve a situation in which the client refused to consult with his or her attorney concerning the strategic wisdom of conceding guilt of certain offenses during closing argument and since we have awarded defendant a new trial in the misdemeanor assault cases on other grounds, I do not believe that we need to directly address the extent to which *Nixon* requires a new approach to the "concession" issue in North Carolina in order to resolve this case.

driving while license revoked, reckless driving, and misdemeanor possession of stolen goods[17] in the immediate aftermath of the closing arguments.[18] In addition, defendant's injection of a reference to misdemeanor larceny, taken in context, amounts to acceptance of his trial counsel's concession of guilt to that offense as well. Although defendant testified at the hearing on remand that he did not understand what the trial court meant by "concession" and that he specifically objected to his trial counsel's concessions immediately after the conclusion of his closing argument, the remand court did not adopt this testimony in its findings of fact. Given that the remand court had an opportunity to evaluate the defendant's demeanor and given that other components of defendant's testimony were of questionable credibility,[19] the remand court had ample basis for declining to accept defendant's testimony to this effect. We have expressly held such after-the-fact expressions of consent to be sufficient compliance with *Harbison, State v. Johnson,* 161 N.C. App. 68, 76-78, 587 S.E.2d 445, 451 (2003), *disc. review denied and appeal dismissed,* 358 N.C. 239 (2004), and I see no reason why they should be deemed ineffective under *Nixon.* As a result, aside from the fact that this issue is not properly before us, I conclude that the record adequately reflects that defendant consented to his trial counsel's decision to concede his guilt of driving while impaired, driving while license revoked, reckless driving, and misdemeanor larceny.

The same cannot be said, however, of the decision by defendant's trial counsel to concede his client's guilt of involuntary manslaughter and two counts of assault with a deadly weapon. Although the involuntary manslaughter concession was mentioned during the post-argument colloquy between the trial court, counsel, and defendant, defendant never indicated his consent to his trial counsel's

---

17. In view of the fact that the trial court arrested judgment in the misdemeanor possession of stolen property case, defendant has not pursued a challenge to the decision of his trial counsel to concede his guilt of that offense on appeal.

18. The remand court found that defendant agreed with the concessions that his trial counsel made during his closing argument during the post-argument colloquy, which suggests that the remand court believed that defendant had approved of all of his counsel's concessions. However, to the extent that this finding represents a determination to that effect by the remand court, it lacks adequate evidentiary support, since the transcript of that colloquy clearly indicates that defendant only expressed approval of some, but not all, of the concessions of guilt made during his trial counsel's final argument. As a result, this particular factual finding lacks adequate evidentiary support.

19. For example, defendant denied having consumed any alcohol on the date of the incident from which the present charges resulted.

decision to concede defendant's guilt of that offense at that time. Instead, the most that can be said is that the prosecutor mentioned that concession in defendant's presence without any response from defendant. Although the record developed at the remand hearing reflects that defendant and his trial counsel had discussed issues of trial strategy prior to trial and that both defendant and his trial counsel were aware of the strength of the State's evidence, defendant's trial counsel admitted during the remand hearing that the defense had not conceded defendant's guilt of anything during the evidentiary portion of the trial. Furthermore, despite the fact that defendant's trial counsel did speak with defendant about the nature of the argument which he planned to make before he began speaking to the jury in very general terms,[20] it is clear from the record that they had not discussed the possibility that defendant's trial counsel would concede defendant's guilt of any specific offense in his closing argument at any time before that point. In addition, the record does not contain any indication that defendant refused to consult with his trial counsel about fundamental questions of trial strategy or tactics prior to or during the trial. Had defendant simply refused to engage in such discussions, *Nixon* might permit me to vote to uphold defendant's convictions for second degree murder and two counts of assault with a deadly weapon in the event that such an outcome was otherwise appropriate under a traditional *Strickland* analysis. In this instance, however, the record reflects that defendant's trial counsel did not broach the subject of how to handle the final argument to the jury until immediately prior to the time when the parties made their summations, when defendant did not have sufficient time to discuss this subject with his trial counsel,[21] and that defendant did not ratify his trial counsel's concessions in his subsequent colloquy with the trial court. As a result, despite the fact that defendant did not, according to the findings of fact made at the remand hearing, respond to his

---

20. The record developed at the hearing on remand does not suggest that defendant's trial counsel told defendant of the exact concessions that he planned to make in advance of summation or that he asked defendant's authorization to make these concessions in the conversation which he had with defendant immediately prior to the beginning of his closing argument. Instead, the record simply reflects that defendant's trial counsel merely told defendant in very general terms what he was going to do.

21. The fact that defendant's trial counsel adopted a "primary strategy and goal [of] focus[ing] on reducing the second degree murder offense to lesser offense" and that defendant "did not have any objections or questions about the trial strategy when it was discussed with" his trial counsel is not tantamount to an agreement that it would be appropriate for defendant's trial counsel to concede defendant's guilt of a series of specific offenses during his closing argument to the jury.

counsel's statement that he was going to concede guilt of certain offenses during his closing argument, I do not believe that a "non-response" under this set of circumstances is what the United States Supreme Court had in mind when it found the representation at issue in *Nixon* to be constitutionally adequate. Thus, I conclude that, in light of my understanding of *Nixon*, defendant's trial counsel did not adequately consult with him prior to conceding his guilt of involuntary manslaughter and two counts of assault with a deadly weapon; that the record does not adequately reflect that defendant would have been uncooperative had such consultation been attempted; that defendant did not provide any "after the fact" consent to the making of these concessions;[22] and that the absence of consent to the making of these concessions deprived defendant of the effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution as interpreted in *Nixon*.

Furthermore, given that the Court, with my concurrence, has already decided that defendant is entitled to a new trial in the cases in which he has been convicted of two counts of assault with a deadly weapon because of an instructional error, I need not address the extent to which the unconsented-to concession of guilt justifies an award of a new trial in those cases under *Nixon*. In addition, given that defendant's trial counsel put his principal emphasis on persuading the jury to refrain from convicting defendant of second degree murder and given that the principal difference between second degree murder and the lesser included offenses that were submitted for the jury's consideration revolved around the existence of the required *mens rea*, an element that is difficult to reduce to a quantifiable set of facts, I also conclude that defendant would be entitled to a new trial in the homicide case even if the traditional *Strickland* prejudice standard applies under *Nixon*.[23] As a result, given my ulti-

---

22. Although the trial court found at the remand hearing that defendant did not tell his trial counsel or the trial court that he had any objections to the manner in which his case had been argued to the jury and that defendant expressed satisfaction with his lawyer at the time that "he admitted aggravating and grossly aggravating factors" relating to his driving while impaired convictions, I am not comfortable concluding that the absence of such objections is tantamount to consent given the difficulty of "unringing the bell" at the time that the "non-objections" to which the remand court points occurred.

23. Since *Nixon* does not address a situation in which a defendant's trial counsel concedes guilt without making an adequate attempt to consult with his client, the Supreme Court has not addressed the prejudice standard which should be applied in such instances. At least one state court has concluded that the *Cronic* automatic prejudice standard should be applied in such instances. *Cooke*, 977 A.2d 855.

mate conclusion that we do not need to address the issue of whether *Nixon* applies in lieu of *Harbison* in cases involving concession of guilt issues on this set of facts, I concur in the Court's conclusion that defendant is entitled to a new trial in the cases in which he was convicted of second degree murder and two counts of assault with a deadly weapon without adopting all of its logic. Thus, I concur in the Court's decision in part and concur in the result in part.