STATE OF NORTH CAROLINA v. CLAUDIA HOWELL WELLS, ALIAS CLAUDIE HOWELL WELLS

No. 807SC1127

(Filed 2 June 1981)

1. Automobiles § 112— manslaughter case—officer's opinion as to point of impact

The trial court in a manslaughter prosecution arising out of an automobile accident erred in permitting the investigating officer to testify that his investigation revealed that the collision occurred in decedent's lane of travel, since the officer's testimony constituted an opinion or conclusion which invaded the province of the jury.

2. Criminal Law § 162— necessity for motion to strike

Where defendant objected each time a witness was asked questions calling for inadmissible opinion testimony, no motion to strike was required to preserve defendant's objections to the testimony elicited by the improper questions.

3. Criminal Law § 169.3— objection to evidence—no waiver by cross-examination

Defendant did not waive his objection to incompetent opinion testimony by his cross-examination of the witness in an attempt to destroy the probative value of the opinion testimony.

4. Automobiles § 113.1— manslaughter—sufficiency of evidence

The State's evidence was sufficient for the jury in a prosecution for manslaughter arising out of an automobile accident where it tended to show that defendant was driving under the influence of alcohol at the time of the accident; defendant collided with a car that only seconds before had been observed to be in its proper lane of travel; almost all of the debris and gouge marks resulting from the collision and the two automobiles involved in the collision were found in decedent's lane of travel; and in the opinion of the investigating officer the collision did occur in decedent's lane of travel.

APPEAL by defendant from *Britt, Judge.* Judgments entered 24 July 1980 in Superior Court, WILSON County. Heard in the Court of Appeals 31 March 1981.

Defendant was charged with driving under the influence and manslaughter arising out of an automobile collision which occurred on 25 December 1979 in Wilson County. Upon his conviction in District Court for driving under the influence, defendant appealed to Superior Court where the two charges were consolidated for trial.

At the trial, Trooper J. H. Parks testified for the State that he was called to the scene of an accident on Rural Paved Road

1136 at 12:10 a.m. on 25 December 1979 and arrived there at approximately 12:25 a.m. It was raining lightly at the time, and the road was wet. He found two vehicles at the scene, a 1967 Chevrolet Chevelle and a 1966 Ford. The sole occupant of the Chevelle was dead, and the sole occupant of the Ford, defendant, was unconscious. Both cars were in the eastbound lane of the two lane road, the Chevelle facing west and the Ford facing south. The Chevelle was approximately 570 feet west of a bridge passing over Interstate 95, and the Ford was approximately 160 feet west of the Chevelle. Both cars were most heavily damaged on the left front side. Debris consisting of glass, pieces of chrome and dirt was located in the center of the eastbound lane, although one large piece, a fender, was located in the westbound lane. There were also fresh gouge marks in the center of the eastbound lane where the debris was located, and Trooper Parks observed asphalt under the front of the Ford. Because of the location of the gouge marks and the debris, Trooper Parks concluded that the impact had occurred in the center of the eastbound lane. While examining the Ford, Parks detected a strong odor of alcohol coming from defendant's mouth and found a half-empty bottle of vodka on the rear seat of the car. Defendant was taken to the hospital about thirty minutes later, and Parks talked with him there at approximately 1:20 a.m. He again detected the strong odor of alcohol coming from defendant, observed that defendant's eyes were glassy and red and his speech mumbled and formed the opinion that defendant had consumed a sufficient quantity of intoxicating liquor to substantially and appreciably impair his mental or physical faculties.

On cross-examination, Trooper Parks again described the location of the debris and gouge marks which he had observed at the scene of the collision and stated his opinion that the impact had occurred at that spot. He admitted, however, that the largest and heaviest piece of debris, the fender, was located in the westbound lane, that he could not accurately determine the age of the gouge marks or whether the asphalt under defendant's car came from them and that he was conducting his investigation of the scene at night with a flashlight.

Sergeant B. K. Tucker testified that defendant blew .23% on a breathalyzer test which Tucker administered to defendant at approximately 2:25 a.m. on the night of the accident.

Randy Watson testified that he saw defendant at approximately 11:30 p.m. on the night of the accident at a cafe not far from Rural Paved Road 1136. He could not tell whether defendant had been drinking and did not smell any alcohol on defendant's person. When Watson left the cafe in his car, he saw defendant's car pulling out behind him. After Watson got on Rural Paved Road 1136 traveling west, defendant passed him going approximately 60 m.p.h. and drove around a curve out of Watson's sight. As Watson approached the bridge over I-95, he saw defendant parked in a churchyard on the side of the road, but as Watson crossed the bridge over I-95, he looked in his rearview mirror and saw defendant pull out of the churchyard again heading west. On the other side of the bridge, Watson saw a car coming towards him in the eastbound lane. He first thought the car was a motorcycle because its inside headlight was out, but as it approached, he could tell it was an automobile. It was close to the center line, but not over it, and Watson slowed down as it approached to be sure he did not hit it. After passing the car, Watson looked in his rearview mirror and saw a big flash as the car which he had just passed collided with defendant's car. Watson could not tell on which side of the road the collision occurred.

Defendant stipulated that the death of the decedent resulted from the collision at issue but presented no evidence. His motion for a directed verdict was denied.

The jury returned verdicts of guilty of driving under the influence and involuntary manslaughter. From judgments imposing concurrent prison terms of six months for driving under the influence and five to seven years for involuntary manslaughter, defendant appeals.

*Attorney General Edmisten, by Associate Attorney Jane P. Gray and Deputy Attorney General William W. Melvin, for the State.*

*Kirby and Clark, by John E. Clark, for defendant appellant.*

VAUGHN, Judge.

[1] Defendant assigns error to the court's admission, over his repeated objections, of Trooper Parks' opinion as to where the collision between the two cars occurred. This assignment of error is sustained.

Our State Supreme Court has held in several cases that while it is competent for an investigating officer to testify as to the condition and position of the vehicles and other physical facts observed by him at the scene of an accident, his testimony as to his conclusions from those facts is incompetent. *See Farrow v. Baugham*, 266 N.C. 739, 147 S.E. 2d 167 (1966); *McGinnis v. Robinson*, 258 N.C. 264, 128 S.E. 2d 608 (1962); *Shaw v. Sylvester*, 253 N.C. 176, 116 S.E. 2d 351 (1960). A case almost directly on point is *Cheek v. Barnwell Warehouse and Brokerage Co.*, 209 N.C. 569, 183 S.E. 729 (1936). In that case the Supreme Court upheld the trial court's exclusion of opinion testimony by a nonexpert witness as to where a collision occurred based upon his examination of the scene sometime after the accident on the ground that its admission would invade the province of the jury. In the present case, the most crucial question for the jury on the manslaughter charge was whether defendant caused the collision which resulted in decedent's death by crossing the center line into decedent's lane of travel. By testifying that his investigation revealed the point of impact between the two cars to be in decedent's lane of travel, Trooper Parks stated an opinion or conclusion which invaded the province of the jury. *Cf. Kaczala v. Richardson*, 18 N.C. App. 446, 197 S.E. 2d 21, *cert. denied*, 283 N.C. 753, 198 S.E. 2d 722 (1973).

State concedes that the opinion of Trooper Parks was incompetent but argues that defendant waived his objections thereto by failing to move to strike it and by eliciting similar testimony from Trooper Parks on cross-examination. We reject both arguments.

[2]   Defendant objected each time Trooper Parks was asked to state his opinion as to where the impact occurred. The questions were clearly incompetent as calling for inadmissible opinion testimony; nevertheless, defendant's objections to them were overruled, and Trooper Parks was allowed to state the inadmissible opinion called for by the questions. On these facts, no motion to strike was required to preserve defendant's objections to the testimony elicited by the improper questions. Cases to the contrary relied upon by State are distinguishable. In the majority of those cases inadmissibility was not indicated by the question but only became apparent by some feature of the answer. *Highway Commission v. Black*, 239 N.C. 198, 79 S.E. 2d 778 (1954); *State v.*

*Huggins*, 35 N.C. App. 597, 242 S.E. 2d 187, *disc. rev. denied*, 295 N.C. 262, 245 S.E. 2d 779 (1978); *State v. Robinson*, 35 N.C. App. 617, 242 S.E. 2d 197 (1978). In *Mays v. Butcher*, 33 N.C. App. 81, 234 S.E. 2d 204 (1977), although the defendant objected to the improper question, he failed to move to strike not only the answer thereto, but also the answers to several subsequent questions in the same vein to which he did not object.

[3] We also find no waiver resulting from defendant's cross-examination of Trooper Parks. It is true, as argued by State, that an objection is waived when like evidence is thereafter admitted without objection, especially where the like evidence is elicited by the objecting party himself. *State v. Williams*, 274 N.C. 328, 163 S.E. 2d 353 (1968); *Adams v. Godwin*, 254 N.C. 632, 119 S.E. 2d 484 (1961). However, it is also true that one does not waive an objection, otherwise sound and seasonably made, by attempting to explain or destroy the probative value of the evidence on cross-examination. *State v. Van Landingham*, 283 N.C. 589, 197 S.E. 2d 539 (1973); *State v. Aldridge*, 254 N.C. 297, 118 S.E. 2d 766 (1961); *State v. Godwin*, 224 N.C. 846, 32 S.E. 2d 609 (1945); 1 Stansbury's N.C. Evidence § 30 (Brandis rev. 1973). Defendant's cross-examination of Trooper Parks appears to have been for the purpose of destroying the probative value of the incompetent opinion stated by Parks. Defendant was entitled to offer such testimony without losing the benefit of his earlier objections to that opinion.

[4] Defendant also assigns error to the denial of his motion for a directed verdict as to the manslaughter charge on the ground that, without the incompetent testimony of Trooper Parks as to where the impact occurred, State's evidence created only a conjecture as to whether defendant's conduct was the proximate cause of the collision and resulting death of the decedent. This assignment is overruled. In ruling on a motion for a directed verdict, all of the evidence actually admitted, whether competent or incompetent, which is favorable to the State must be taken into account and considered in the light most favorable to the state. *State v. Hunt*, 289 N.C. 403, 222 S.E. 2d 234, *death sentence vacated*, 429 U.S. 809 (1976). Applying these principles to the present case, State's evidence tended to show that defendant was driving under the influence of alcohol at the time of the accident, he collided with a car that only seconds before was observed to be in its proper lane of travel, almost all of the debris and gouge

marks resulting from the collision were found in the decedent's lane of travel as were both cars after the collision and, in the opinion of the investigating officer, the collision did occur in the decedent's lane of travel. These facts create more than a conjecture as to the cause of the collision and differ markedly from the facts in *State v. Hewitt*, 263 N.C. 759, 140 S.E. 2d 241 (1965), relied upon by defendant, where there was no evidence of any reckless or wanton conduct by the defendant and the physical facts observed after the accident supported several possibilities as to where the impact occurred.

In accordance with our preceding discussion, defendant is entitled to a new trial on the manslaughter charge as a result of the court's erroneous admission into evidence of the incompetent opinion testimony of Trooper Parks. Defendant also contends, however, that he is entitled to a new trial on the charge of driving under the influence because the jury's verdict thereon may have been influenced to his prejudice by the incompetent testimony of Trooper Parks. In view of the overwhelming evidence of defendant's intoxication at the time of the collision, it is unlikely that the jury would have reached a different result had the incompetent testimony been excluded.

In case No. 79CRS14141, new trial.

In case No. 79CRS14148, no error.

Judges CLARK and WELLS concur.