An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-935

NORTH CAROLINA COURT OF APPEALS

Filed: 20 May 2014

STATE OF NORTH CAROLINA

v.

CHRISTOPHER CASH,
        Defendant.

Onslow County
Nos. 12 CRS 50104
     12 CRS 50106
     12 CRS 50120-22
     12 CRS 50124

Appeal by defendant from judgments entered 25 February 2013 by Judge W. Allen Cobb, Jr., in Onslow County Superior Court. Heard in the Court of Appeals 5 February 2014.

> *Attorney General Roy Cooper, by Assistant Attorney General John W. Congleton, for the State.*
>
> *Appellate Defender Staples Hughes, by Assistant Appellate Defender Emily H. Davis, for defendant-appellant.*

GEER, Judge.

Defendant Christopher Cash appeals from his conviction of a number of charges arising out of a one-car accident, including driving while license revoked, reckless driving to endanger, two counts of felony death by vehicle, two counts of felony hit and run causing serious injury or death, and felony serious injury by vehicle. Defendant primarily contends on appeal that the

trial court erred in allowing a highway patrol trooper to testify regarding how the accident occurred when the trooper did not witness the accident occur and was not qualified as an expert in accident reconstruction. Based on our review of the trooper's testimony, we hold that he did not express any opinions that amounted to expert testimony. His testimony either qualified as proper lay opinion testimony or amounted to admissible shorthand statements of facts. Nonetheless, we agree with defendant that the trial court committed error by sentencing him based on a Class F hit and run felony when the most serious hit and run offense of which he was convicted was a Class H felony. We, therefore, remand for a new sentencing hearing.

## Facts

The State's evidence tended to show the following facts. On the evening of 5 January 2012, defendant and his now-wife Chauntelle Wann made plans to go to Anytime Billiards with defendant's brother, Jeffrey Cash, and two of the Cash brothers' coworkers, Jerry Jackson and Kevin Embler. Anytime Billiards was located just a few miles from where defendant lived on Pony Farm Road, in Jacksonville, North Carolina.

Before going to Anytime Billiards, defendant had already begun to drink "heavily" with Mr. Embler that afternoon at

Tobie's Gentleman's Club. At approximately 7:30 p.m. on 5 January 2012, defendant drove Ms. Wann, Mr. Cash, Mr. Jackson, and Mr. Embler to Anytime Billiards in his Volkswagen Jetta. While at Anytime Billiards, the group consumed pitchers of beer over the course of several hours. While defendant, Mr. Cash, Mr. Jackson, and Mr. Embler were drinking "heavily" at Anytime, Ms. Wann was not.

Around 12:00 a.m. on 6 January 2012, defendant drove the group in the Jetta from Anytime Billiards to a Trade Wilco Hess where, at approximately 12:15 a.m., defendant purchased a case of beer, put the beer in the Jetta, and continued driving on Highway 53. Defendant then turned right onto Pony Farm Road. Mr. Cash was sitting in the backseat with Mr. Embler and Mr. Jackson. He "could feel" that defendant was driving "fast" and told defendant to "slow down." Seconds later, at approximately 12:20 a.m., the Jetta wrecked in a ditch along Pony Farm Road.

Then, sometime between 12:20 a.m. and 12:40 a.m. local resident Brian O'Hara and emergency first responders found defendant's green Volkswagen Jetta overturned in a westbound ditch on Pony Farm Road. First responders then discovered two deceased men lying at different distances from the Jetta and identified them as Mr. Embler and Mr. Jackson. Mr. O'Hara rescued defendant and Ms. Wann from the overturned Jetta. Mr.

Cash was lying on the ground outside of the overturned Jetta unconscious, but he regained consciousness and rested with Ms. Wann in Mr. O'Hara's truck bed.

Defendant moved about "look[ing] like he was in a daze and like he was in a loss," cursing. When deputies from the Onslow County Sheriff's Office arrived between 12:30 a.m. and 12:40 a.m., defendant had left the accident scene in a taxicab.

State Highway Patrol Trooper Timothy Silance arrived at the accident scene at 12:44 a.m. Trooper Silance surveyed the scene and learned from Ms. Wann that defendant had been driving.[1] Mr. Cash and Ms. Wann were then transported to the hospital. After learning from Mr. O'Hara that defendant had left in a taxicab having a particular description, Trooper Silance pursued defendant's cab in his patrol car. Trooper Silance located and pulled over defendant's cab between 3:00 a.m. and 3:30 a.m. He ordered defendant out of the cab and noticed defendant had fresh facial lacerations, shoulder and chest injuries that appeared to have been made by a seatbelt, red glassy eyes, a strong odor of alcohol, slurred speech, and a stumbling gait.

When asked where he was going, defendant told Trooper Silance that he was on his way to the Onslow Memorial Hospital

---

[1]The defense objected to this testimony from Trooper Silance, but this objection was overruled, and defendant does not challenge that ruling on appeal.

to see Ms. Wann because she had been involved in a car wreck. Trooper Silance then took defendant into custody and to the hospital where a nurse drew defendant's blood. A chemical analysis of defendant's blood revealed a blood alcohol concentration of 0.10 grams per 100 milliliters of blood. At around 6:30 a.m. Trooper Silance took defendant to jail.

At the close of the State's evidence, defendant made a motion to dismiss all charges. The trial court denied the motion generally but granted it with respect to one charge of felony serious injury by motor vehicle with Ms. Wann being the victim. Defendant then introduced several exhibits but presented no witnesses. At the close of all the evidence, defendant renewed his motion to dismiss, which the court granted with respect to the charges of misdemeanor hit and run failing to notify authorities and failing to report an accident.

The jury convicted defendant of one count of driving while impaired, two counts of involuntary manslaughter, one count of misdemeanor reckless driving to endanger, one count of misdemeanor driving while license revoked, two counts of felony death by motor vehicle, two counts of felony hit and run causing injury, and one count of felony serious injury by motor vehicle. The trial court arrested judgment on the driving while impaired and involuntary manslaughter convictions and sentenced defendant

in the following manner: two consecutive terms of 38 to 58 months for two counts of felony death by vehicle; three consecutive terms of 25 to 39 months for one count of felony serious injury by vehicle and two counts of felony hit and run causing serious injury or death; and one concurrent term of 120 days for driving while license revoked and reckless driving to endanger. Defendant timely appealed to this Court.

I

Defendant first contends that the trial court erred in permitting Trooper Silance to testify that defendant refused to make any post-arrest, post-*Miranda* statement to law enforcement. He argues that evidence of defendant's post-arrest, post-*Miranda* silence was inadmissible for any purpose. Because defendant did not object to the testimony at trial, he asks that we review the issue for plain error.

As our Supreme Court has observed:

> For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice -- that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affect[s] the fairness, integrity or public reputation of judicial proceedings[.]

*State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (internal citations and quotation marks omitted).

"'A criminal defendant's right to remain silent is guaranteed under the Fifth Amendment to the United States Constitution and is made applicable to the states by the Fourteenth Amendment.'" *State v. Richardson*, ___ N.C. App. ___, ___, 741 S.E.2d 434, 440 (2013) (quoting *State v. Moore*, 366 N.C. 100, 104, 726 S.E.2d 168, 172 (2012)). "A defendant's post-arrest, post-*Miranda* . . . silence . . . may not be used for any purpose." *State v. Mendoza*, 206 N.C. App. 391, 395, 698 S.E.2d 170, 174 (2010).

When asked initially whether and when he had "a conversation with Chris Cash what about [sic] he had been doing the evening [of the wreck] or where he'd been," Trooper Silance gave the following testimony:

> A   [My questioning defendant about the accident] -- that did not occur until at the jail, after I had advised him, at 6:34 a.m.
>
> Q   So you advised him of his Miranda rights?
>
> A   Yes, which is when I intended to question him formally on the events.
>
> Q   After you advised him of his rights, did he make some statement about his activities that evening?

> A    He refused any comment at all about the event.

Here, the admission of Trooper Silance's testimony about defendant's post-arrest and post-*Miranda* refusal to speak was error. *See Moore*, 366 N.C. at 105, 726 S.E.2d at 172 (holding trial court committed error when it admitted officer's testimony defendant "'refused to talk about the case at that time'" after he had been arrested and read his *Miranda* rights). The State also appears to concede as much.

The question remains whether the error had a probable impact on the jury's verdicts. Defendant argues that, in the absence of Trooper Silance's testimony, the jury would have probably reached a different result because, according to defendant, the evidence he was driving the Jetta when the accident occurred was "hardly overwhelming." Defendant points to the fact that there was no witness who testified to seeing the accident occur, Mr. Cash did not provide a description of how the accident occurred, and a swab of the cabin of the wrecked Jetta did not reveal any evidence of defendant's DNA.

In summarizing the analysis our Supreme Court relied upon in *Moore* to determine whether evidence of a defendant's post-arrest, post-*Miranda* silence amounted to plain error, this Court recently explained:

>[O]ur review of *Moore* suggests that the following factors, none of which should be deemed determinative, must be considered in ascertaining whether a prosecutorial comment concerning a defendant's post-arrest silence constitutes plain error: (1) whether the prosecutor directly elicited the improper testimony or explicitly made an improper comment; (2) whether the record contained substantial evidence of the defendant's guilt; (3) whether the defendant's credibility was successfully attacked in other ways in addition to the impermissible comment upon his or her decision to exercise his or her constitutional right to remain silent; and (4) the extent to which the prosecutor emphasized or capitalized on the improper testimony by, for example, engaging in extensive cross-examination concerning the defendant's post-arrest silence or attacking the defendant's credibility in closing argument based on his decision to refrain from making a statement to investigating officers.

*Richardson*, ___ N.C. App. at ___, 741 S.E.2d at 441-42.

Here, the evidence is overwhelming that defendant was driving the Jetta and caused the wreck that resulted in the deaths of Mr. Embler and Mr. Jackson. Conditions on the night of the accident were dry and clear. Mr. Cash testified that defendant was in the driver's seat when they left the Wilco Hess and recalls telling defendant to "slow down" as defendant drove down Pony Farm Road. Mr. Cash also testified that defendant typically did not let anyone else drive the Jetta because "[i]t's his vehicle and he drives his own vehicles[,] [and that is] how it's always been."

Ms. Wann told both first responder Randi Barwick and Trooper Silance that defendant was driving.[2] In addition, Mr. O'Hara testified that after he pulled Ms. Wann from the front passenger side window of the Jetta, he also pulled defendant through the same window, although defendant had been further away from Mr. O'Hara than Ms. Wann.

Further, when the police arrived at the accident scene, defendant abandoned his friends, who were either injured or killed by the wreck, by riding off in a taxicab. Trooper Silance testified that when he stopped defendant's taxicab defendant appeared as if he had been in a car wreck and was appreciably intoxicated, almost three hours after the wreck had occurred. When defendant had his blood drawn at the hospital, sometime after he was placed under arrest, his blood alcohol level was 0.10.

In addition to the overwhelming evidence of defendant's guilt, we also note that while the prosecutor directly elicited Trooper Silance's testimony about defendant's post-arrest, post-*Miranda* silence, there is no indication that the prosecutor made an effort to emphasize or capitalize on that testimony.

---

[2]The defense objected to this testimony from Ms. Barwick, but the objection was overruled, and defendant does not challenge that ruling on appeal.

Additionally, defendant did not testify, so his credibility was not at issue.

Under *Moore*, given the overwhelming evidence of defendant's guilt, the lack of any emphasis by the State on the impermissible testimony, and the fact that defendant did not testify, we cannot conclude that the brief, passing mention of defendant's post-arrest, post-*Miranda* refusal to comment about the accident had a probable impact on the jury's verdicts. *See State v. Alexander*, 337 N.C. 182, 196, 446 S.E.2d 83, 91 (1994) (holding no plain error when evidence of defendant's guilt was substantial, defendant "did not object to the line of questioning at issue, the comments [on defendant's silence] were relatively benign, and a review of the record indicates that the prosecutor made no attempt to emphasize the fact that defendants did not speak with them after having been arrested"). We, therefore, hold that the trial court did not commit plain error when it admitted the evidence of defendant's post-arrest, post-*Miranda* silence.

## II

Defendant next argues that the trial court erred in admitting Trooper Silance's testimony regarding how the accident occurred when Trooper Silance did not witness the accident occur and was not qualified as an expert in accident reconstruction.

In particular, defendant complains of Trooper Silance's testimony that the Jetta flipped multiple times before resting, that there were multiple points of impact in the ditch, and that occupants of the car were ejected. Defendant contends that the testimony amounted to Trooper Silance's improperly providing an expert opinion in accident reconstruction. Because defendant did not object to this testimony at trial, we review for plain error.

Defendant cites *State v. Maready*, 205 N.C. App. 1, 695 S.E.2d 771 (2010), and *State v. Wells*, 52 N.C. App. 311, 278 S.E.2d 527 (1981), for the proposition that a trial court commits error when it admits accident reconstruction testimony of a witness who did not observe the accident occur and is not qualified as an expert in accident reconstruction.

In *Maready*, the State presented testimony from officers who "did not witness the accident, but gave their opinions indicating Defendant was at fault based upon their examination of the scene of the accident. The officers were not proffered as experts in accident reconstruction." 205 N.C. App. at 17, 695 S.E.2d at 782. In holding that the testimony was inadmissible, this Court explained that "[a]ccident reconstruction opinion testimony may only be admitted by experts, who have proven to the trial court's satisfaction that

they have a superior ability to form conclusions based upon the evidence gathered from the scene of the accident than does the jury." *Id.*

In *Wells*, a highway patrol trooper, who apparently was not an expert in accident reconstruction, testified at trial about what he observed at the scene of a wreck after the wreck had already happened. This Court explained: "Because of the location of the gouge marks and the debris, [the trooper] concluded that the impact had occurred in the center of the eastbound lane" and gave testimony at trial to that effect. 52 N.C. App. at 312, 278 S.E.2d at 528. In concluding that admission of this testimony was error, this Court explained: "By testifying that his investigation revealed the point of impact between the two cars to be in decedent's lane of travel, [the trooper] stated an opinion or conclusion which invaded the province of the jury." *Id.* at 314, 278 S.E.2d at 529. The trial court, therefore, committed reversible error by admitting the testimony. *Id.* at 316, 278 S.E.2d at 530.

At trial, Trooper Silance had the following exchange with the prosecutor on direct examination:

> Q    How about the two deceased persons, were their bodies still there at the scene when you were doing the investigation?
>
> A    Yes.    Any time there's a vehicle accident and someone is killed instantly, at

the time of the collision, . . . bodies remain where they are for two purposes: photos and measurements.  I mean, you can get more precise measurements when the bodies are in the same exact place as they are at the time of the collision.

Q   So what investigative action did you take, with regard to the bodies there at the scene?

A   They're important primarily because, when someone is ejected, . . . it helps you determine speed, because if someone is ejected . . . a great distance from the vehicle, it's easier to . . . form and estimate a speed of that vehicle.

. . . .

Q   You said the vehicle was upside down.

A   Correct.

Q   Did it have damage to the roof or to the sides of the vehicle?

A   Every part of the vehicle was damaged.

Q   Based on your training and experience and the observations you made at the scene, did you form an opinion as to whether or not the vehicle had rolled during the collision?

A   I was positive it had.

Q   Why do you say that?

A   The vehicle was overturned on final rest, and using that and the impact with the ditch the manner that the ditch was disturbed, it was obvious that the vehicle got flipped over at least once.

Q    Did it appear as if the vehicle had overturned or flipped or spun more than once?

A    Yes.

Q    Why do you say that?

A    . . . there was multiple impacts on the ditch.  It wasn't just one spot where the ditch or the shoulder was disturbed, there was multiple spots.

Trooper Silance also testified that car parts were lying on the shoulder primarily but were also in the road, and there was shattered glass around the Jetta.

Here, it is undisputed that Trooper Silance did not personally witness the accident occur and was not an expert in accident reconstruction even though he "had some training in investigating collisions and looking for skid and yaw marks."[3] Trooper Silance observed the damaged Jetta and its surroundings and testified that he was "positive" the vehicle had flipped and it was "obvious" that the vehicle "did . . . appear" to have rolled "at least once" during the collision.

In the challenged portion of his testimony, Trooper Silance was not acting as an accident reconstruction expert, testifying

_____

[3]A "yaw" mark is a pattern of skid mark made by a car that indicates the car was traveling at a high speed and is caused by the momentum of the car moving from side to side.  Defendant does not challenge this portion of Trooper Silance's testimony, and nothing in the record reveals that Trooper Silance relied on his training with skid and yaw marks in giving the challenged testimony.

as to who or what was the cause of the accident as the witness testified in *Maready*, or deciphering from evidence at the scene at what point on a road two vehicles had collided, as the witness testified in *Wells*. Trooper Silance's observations and testimony did not involve any specialized or technical knowledge, that would fall within the province of Rule 702 of the Rules of Evidence.

Instead, Trooper Silance's testimony fell within the scope of Rule 701 of the Rules of Evidence:

> If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.

Trooper Silance testified to multiple observations with detailed descriptions and that testimony reflected his lay conclusions upon seeing a heavily damaged overturned car in proximity to two dead bodies lying on the ground outside the car, shattered glass, car parts, and significant disturbances in a roadside ditch. By hearing the inferences Trooper Silance drew from his observations of the scene, the jury was better able to understand why Trooper Silance proceeded as he did, including pursuing defendant's cab. The jury could also better understand

the Trooper's testimony regarding what he saw when he arrived at the scene.

Moreover, as this Court explained in *State v. Graham*, 186 N.C. App. 182, 195, 650 S.E.2d 639, 648 (2007) (quoting *State v. Lloyd*, 354 N.C. 76, 109, 552 S.E.2d 596, 620 (2001)), "'[t]he instantaneous conclusions of the mind as to the appearance, condition, or mental or physical state of persons, animals, and things, derived from observation of a variety of facts presented to the senses at one and the same time, are, legally speaking, *matters of fact*.'" These conclusions are commonly referred to as "'shorthand statements of fact'" and are not subject to the limits on lay opinion testimony in Rule 701. 186 N.C. App. at 195, 650 S.E.2d at 648-49. A "shorthand statement of facts" is "a well recognized method of permitting a witness to describe an incident or scene that can hardly be described in any other manner." *State v. Nichols*, 268 N.C. 152, 154, 150 S.E.2d 21, 23 (1966). We hold that Trooper Silance's statements to the extent they pertain to how the wreck occurred were a "shorthand statement of fact" that described the accident scene as he observed it and did not amount to a purported scientific or technical opinion on accident reconstruction subject to Rule 702.

In other cases, our appellate courts have similarly designated as "shorthand statements of fact" witnesses' impressions of the manner in which physical damage or disturbance had been caused. In *Graham*, the defendant challenged the admission of testimony from one officer who stated, "'When I got there [to the crime scene], I noticed . . . [t]hat the front door had been forced open . . . . It was clear to me that the front door had been forced,'" and testimony from another officer that "'somebody had kicked in the door . . . . The door had actually been locked to where when the door was kicked in, the deadbolt was still in the locked position but had pushed through the doorframe.'" 186 N.C. App. at 195, 650 S.E.2d at 648. This Court held that the observations "were simply instantaneous conclusions drawn by the witnesses upon seeing the door standing ajar but still bolted, and the splintered door frame. The testimony of each witness was a shorthand statements [sic] of fact . . . ." *Id.* at 196, 650 S.E.2d at 649. *See also, e.g., Alexander*, 337 N.C. at 190-91, 446 S.E.2d at 88-89 (upholding admissibility as shorthand statement of fact officer's testimony that photograph shown to him at trial indicated "small openings that appeared to be [caused by] buckshot" in victim's arm).

Even if we were to find that admission of the testimony was error, defendant has still failed to show that the omission of this evidence would have probably produced a different result. In addition to the ample evidence of defendant's guilt, the State presented evidence from Mr. Cash regarding how fast defendant was driving and from Trooper Silance and others describing the scene of the accident. Various witnesses testified that the Jetta was "overturned," and testimony and photographs established that the Jetta was heavily damaged all over. Ms. Barwick also testified that Mr. Embler and Mr. Jackson were "ejected," testimony to which defendant did not object and that Ms. Wann told her, "'I was the only one wearing a seatbelt.'"[4]

Testimony further indicated that one deceased person was located about 60 to 100 feet from the Jetta on the asphalt while the other was about 30 to 40 feet from the Jetta, face down in the ditch. Trooper Silance described the damage to the vehicle as severe, and EMS first responders described the emergency as one involving a rolled vehicle.

Thus, contrary to defendant's claim, Trooper Silance's testimony was not "the only evidence suggesting how the accident

---

[4]The defense also objected to this testimony from Ms. Barwick, but the objection was overruled, and defendant does not challenge that ruling on appeal.

occurred." Evidence from other witnesses and exhibits suggested a substantially similar description of the scene of the wreck from which the jury could easily infer that defendant caused a wreck consistent with the description provided by Trooper Silance's challenged statements.

III

Lastly, we address the problem in sentencing that defendant raises and which the State concedes. Defendant argues that "the trial court entered judgment and sentence against [defendant] for two counts of hit and run with serious bodily injury or death -- a class F felony . . . . The jury, however, was only instructed on and found [defendant] guilty of two counts of hit and run with injury -- a class H felony . . . ." After reviewing the record, we agree.

Under N.C. Gen. Stat. § 20-166(a1) (2013), hit and run *with injury* is a Class H felony. Under N.C. Gen. Stat. § 20-166(a), hit and run *with serious bodily injury* is a Class F felony. Defendant was indicted on one count of hit and run causing serious bodily injury to Mr. Cash and one count of hit and run causing injury to Ms. Wann under N.C. Gen. Stat. § 20-166(a). The trial court, however, did not give any instruction on "serious bodily injury, as defined in G.S. 14-32.4," N.C. Gen. Stat. § 20-166(a)(2), for either of the hit and run counts, and

the verdict sheets identified the hit and run offenses as two counts of "felonious hit and run *with injury*." (Emphasis added.) Yet, the trial court sentenced defendant for each of the hit and run offenses "in the presumptive range" for a Class F felony, a minimum of 25 months and a maximum of 39 months active punishment. We conclude that the trial court erred in entering a judgment and sentence for two violations of N.C. Gen. Stat. § 20-166(a) when the only hit and run crimes for which defendant was convicted were under N.C. Gen. Stat. § 20-166(a1). Consequently, we reverse and remand for resentencing on those two convictions.

No error in part; reversed in part and remanded.

Judges ROBERT C. HUNTER and McCULLOUGH concur.

Report per Rule 30(e).