IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-890

Filed 15 October 2024

Robeson County, Nos. 19 CRS 50642; 22 CRS 1726

STATE OF NORTH CAROLINA

v.

GRANT LEE HUNT

Appeal by defendant from judgment entered 24 March 2023 by Judge James G. Bell in Robeson County Superior Court. Heard in the Court of Appeals 14 August 2024.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Thomas J. Campbell, for the State.*

*Daniel M. Blau for defendant-appellant.*

THOMPSON, Judge.

Grant Lee Hunt (defendant) appeals from a judgment entered upon a jury's verdict finding him guilty of assault with a deadly weapon inflicting serious injury without intent to kill and injury to personal property. On appeal, defendant contends, *inter alia*, that the trial court committed plain error by allowing a lay witness to give an expert opinion about how the accident happened and defendant's intent at the time of the accident. After careful review, we vacate and remand for a new trial.

**I.      Factual Background and Procedural History**

Defendant and Timothy Todd (Todd), the alleged victim in this case, have been neighbors since defendant purchased his home in 2018. Testimony proffered at trial established a great deal of animosity existed between defendant and Todd in the interim period, which we will not exhaustively chronicle. Pertinent to the present appeal, on 23 January 2019, defendant and his wife made a formal request to the Robeson County Sheriff's Department to conduct regular check-ins on their property due to alleged harassment and trespassing onto their property by Todd, including "coming onto the property at night with [a] [4-]wheeler and . . . throwing beer cans and bottles in [defendant's] yard[,] and watching [defendant's] property."

Two days later, on 25 January 2019, defendant was on his way home from work, "on the phone with the wife, driving[,] [a]nd at this point that's when I see an object. You know, just out of - - out of the corner of my eye . . . it just happened so fast . . . [i]t was instant . . . the impact." Defendant testified that he "didn't have time to recognize anything at that point[,]" referring to the collision, but when he exited his vehicle, defendant testified that he asked, "[w]here's that son of a b[****][,]" and he then realized "that there was an accident[,] [a]nd I s[aw] a 4-wheeler and [Todd]." Defendant further testified that he attempted to check on Todd but was instructed to leave the property by Todd's sister, which defendant did. Defendant maintained that he "did not go into [Todd's] driveway to hit th[e] 4-wheeler[.]"

According to Todd, he had no recollection of the accident; he testified at trial that he was "riding down the driveway . . . on the 4-wheeler . . . [to go to] the store to

get gas" when the accident occurred, and that he realized he had been in an accident when he "woke up six weeks later." It is uncontested that Todd suffered a broken leg, ankle, jaw, and eye socket in the accident.

A law enforcement officer who responded to the scene of the accident testified that he first noticed "a 4-wheeler or ATV that was off the roadway in a yard and a pickup truck that was kind of partially in the roadway . . . ." After admitting photographs taken at the scene into evidence, the State then asked the law enforcement officer who, again, *responded* to the scene of the accident, whether he had "form[ed] an opinion whether this was an accident or an intentional act[,]" to which the law enforcement officer replied, "[m]y opinion is it was an intentional act."

On 6 July 2020, defendant was indicted upon a true bill of indictment by a Robeson County Grand Jury for injury to personal property and assault with a deadly weapon with intent to kill inflicting serious injury. The matter came on for trial at the 22 March 2023 Criminal Session of Robeson County Superior Court. Two days later, on 24 March 2023, defendant was found guilty upon a jury's verdict of assault with a deadly weapon inflicting serious injury without intent to kill, and injury to personal property. Pursuant to the jury's verdict, defendant was sentenced to an active term of 120 to 156 months in the custody of the North Carolina Department of Adult Correction. Defendant entered timely oral notice of appeal at trial.

## II.    Discussion

On appeal, defendant contends, *inter alia*, that the trial court "committed plain error by allowing a lay witness to give an expert opinion about how the accident happened, and that [defendant] had intentionally hit [Todd]." We agree.

## A. Standard of review

At the outset, we note that defense counsel failed to object to the testimony proffered by the lay witness at trial; therefore, this issue is subject to plain error review. Under plain error, "a defendant must demonstrate that a fundamental error occurred at trial." *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012). "To show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty." *Id.* (internal quotation marks and citation omitted).

## B. Law enforcement officer's testimony

Generally, a law enforcement officer who does not witness an accident, but later observes the scene of the accident is permitted to testify about physical facts observed at the scene, including the condition of the vehicles after the accident and their positioning. *See State v. Wells*, 52 N.C. App. 311, 314, 278 S.E.2d 527, 529 (1981) (noting that our Supreme Court has held in several cases that "it is competent for an investigating officer to testify as to the condition and position of the vehicles and other physical facts observed by him at the scene of an accident").

On the other hand, if the law enforcement officer *did not personally observe the accident*, "[t]he jury is just as well qualified as the witness to determine what inferences the facts will permit or require." *Shaw v. Sylvester*, 253 N.C. 176, 180, 116 S.E.2d 351, 355 (1960). In fact, a law enforcement officer's "testimony as to his conclusions from those facts is incompetent." *Wells*, 52 N.C. App. at 529, 278 S.E.2d at 529.

In *State v. Denton*, this Court observed that, "we can find no instance of *lay* accident analysis testimony in North Carolina." *State v. Denton*, 265 N.C. App. 632, 636, 829 S.E.2d 674, 678 (2019) (emphasis in original). "Accident reconstruction by its very nature requires expert analysis of the information collected from the scene of the accident and falls under Rule of Evidence 702 . . . ." *Id*. Indeed, in *State v. Maready*, this Court held that, "[a]ccident reconstruction opinion testimony *may only be admitted by experts*, who have proven to the trial court's satisfaction that they have a superior ability to form conclusions based upon the evidence gathered from the scene of the accident than does the jury." *Maready*, 205 N.C. App. 1, 17, 695 S.E.2d 771, 782 (2010) (emphasis added).

Here, the State did not proffer the law enforcement officer who responded to the scene of the accident as an expert witness in accident reconstruction, and upon our careful review of the transcript, we conclude that the trial court did err in allowing the law enforcement officer to testify about the cause of the accident and defendant's intent at the time of the accident despite the officer not having witnessed

the accident. The law enforcement officer testified that his "opinion is it was an intentional act[;]" however, we must reiterate that our Supreme Court has long held that "[t]he jury is just as well qualified as the witness to determine what inferences the facts will permit or require[,]" when the lay witness has not *actually observed the accident, Shaw*, 253 N.C. at 180, 116 S.E.2d at 355, and allowing a law enforcement officer to proffer opinion testimony about defendant's intent at the time of the accident has long constituted *reversible* error. *See Wells*, 52 N.C. App. at 316, 278 S.E.2d at 530 (holding that the defendant in that case "is entitled to a new trial on the manslaughter charge as a result of the court's erroneous admission into evidence of the incompetent opinion testimony" of the law enforcement officer); *see also Cheek v. Barnwell Warehouse & Brokerage Co.*, 209 N.C. 569, 183 S.E. 729 (1936) (affirming the trial court's exclusion of opinion testimony by a *lay witness* based upon his examination of the scene of an accident where *the lay witness had not personally witnessed the accident*).

Moreover, the law enforcement officer in the present case made no showing which could be construed as "prov[ing] to the trial court's satisfaction that [he] ha[s] a superior ability to form conclusions based upon the evidence gathered from the scene of the accident than does the jury[,]" *Maready*, 205 N.C. App. at 17, 695 S.E.2d at 782. Therefore, we conclude that defendant was prejudiced and the trial court *did* commit *reversible* error in allowing the law enforcement officer—who did not observe

the accident—to testify as if the law enforcement officer was an expert witness in accident reconstruction.

However, although the trial court erred in allowing the lay witness to testify as an expert, we review the issue for *plain error*, because defense counsel did not object to the erroneously admitted testimony at trial. After careful review, we conclude that defendant has satisfied this high bar. There was no dispute about whether defendant had struck Todd with his vehicle; the dispute in this case was about whether defendant had *intended* to hit Todd. We conclude that allowing the law enforcement officer to testify that his "opinion is it was an intentional act" had a probable impact on the jury and necessitates a new trial.

Finally, we note that defendant has filed a petition for writ of certiorari with this Court seeking review of the trial court's judgment sentencing defendant as a habitual felon, although the issue was never submitted to the jury and defendant never personally pled guilty to being a habitual felon. **[PWC at 3]** However, in light of our disposition, we need not address defendant's meritorious arguments on this issue, as the errors committed below may not be repeated in a new trial. As a result, defendant's petition for writ of certiorari is dismissed as moot.

## III.   Conclusion

For the aforementioned reason, we conclude that the trial court committed plain error in allowing a lay witness to give an expert opinion about the cause of the

accident and defendant's intent at the time of the accident; consequently, we vacate and remand for a new trial.

VACATED AND REMANDED FOR NEW TRIAL.

Judge TYSON concurs.

Judge STADING dissents by separate opinion.

STADING, Judge, dissenting.

I respectfully dissent from the majority's opinion, which addresses only defendant's first argument. I do not believe that the admission of the law enforcement officer's testimony amounted to plain error.

> [T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done, or where [the error] is grave error which amounts to a denial of a fundamental right of the accused, or the error has resulted in a miscarriage of justice or in the denial to appellant of a fair trial or where the error is such as to seriously affect the fairness, integrity or public reputation of judicial proceedings or where it can be fairly said the instructional mistake had a probable impact on the jury's finding that the defendant was guilty.

*State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (cleaned up). "Trial errors not amounting to constitutional violations do not warrant awarding a new trial unless there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial." *State v. Weldon*, 314 N.C. 401, 411, 333 S.E.2d 701, 707 (1985) (cleaned up). "Erroneous admission of evidence may be harmless where there is an abundance of other competent evidence to support the state's primary contentions, or where there is overwhelming evidence of defendant's guilt." *Id.* (cleaned up).

Here, even if the admission of the officer's testimony was in error, the record contains abundant other evidence to support the jury's verdict, which does not raise

a reasonable possibility that a different result would have been reached at the trial. *See State v. Harshaw*, 138 N.C. App. 657, 662, 532 S.E.2d 224, 227 (2000) (holding admission of testimony was not prejudicial because there was plenary other evidence at trial that supported the State's theory of premeditation and deliberation). For example, an eyewitness recounted the events surrounding the collision:

> Q. All right. Did you see the collision between the defendant and Mr. Todd?
>
> A. Yes, sir.
>
> Q. Can you tell the jury about that?
>
> A. Okay. Well[,] I was on my 4-wheeler. [Mr. Todd] was on his . . . 4-wheeler in front of me. We w[ere] about to leave out of the driveway. That's when that - - the white truck comes by, crossed the . . . double yellow lines. Hits the 4-wheeler. It ends up in the ditch.
>
> Q. Did you hear any noise as he approached - - the defendant approached?
>
> A. I heard the truck rev up.
>
> Q. Can you replicate that for the jury, how that sounded?
>
> A. Whoo, pow. Like that. And . . . I was in shock at the same time so I didn't know . . . what to do. So I jumped off my 4-wheeler and was looking for [Mr. Todd] and I heard [Defendant] say, "Where's that motherf[***]er at? Where's that motherf[***]er at?"
>
> . . . .
>
> Q. All right. Now did the defendant get out of the truck at some point and start fussing at you?

2

A.  Well, when he . . . backed out of the driveway and stopped for a little bit.  He was hollering, "Y'all motherf[***]ers w[ere] in my yard."

. . . .

Q.  Okay.  Did you ever hear the defendant ask if Mr. Todd was okay?

A.  No.

Q.  Did he ever go check on him and see . . . .

A. No.

Other evidence showed a lack of brake marks on the road, but tire marks existed leading towards the 4-wheeler in the ditch.  *See id.*; *see also State v. Buie*, 194 N.C. App. 725, 734, 671 S.E.2d 351, 357 (2009) (concluding admission of law enforcement officer's testimony was a harmless error—not the higher plain-error standard—since there was "sufficient evidence to support the jury's decision, independent from the testimony[.]").  Accordingly, Defendant has not shown a fundamental error occurred at trial; he has not established prejudice such "that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty." *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (cleaned up).

Considering the lack of prejudice, I would also hold that defendant has not established that he received ineffective assistance of counsel.  To show that his trial

counsel's assistance was so defective as to require reversal of his conviction, defendant must satisfy two test components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). Here, defendant cannot meet the second prong because the outcome would remain the same. *See State v. Braswell*, 312 N.C. 553, 563, 324 S.E.2d 241, 248 (1985) (citation omitted) ("The fact that counsel made an error, even an unreasonable error, does not warrant reversal of a conviction unless there is a reasonable probability that, but for counsel's errors, there would have been a different result in the proceedings.").

Defendant also argues that it was incumbent upon the trial court to intervene during the prosecutor's closing argument, focusing on the statement that defendant "gets back in the truck and he backs out over [Mr. Todd's] legs[.]" But because defendant did not object at trial, our review of the alleged error shows that he faces too high of a hurdle. *See generally State v. Parker*, 377 N.C. 466, 474, 858 S.E.2d 595, 600 (noting the defense bar cannot "sit back in silence during closing arguments but then claim error whenever a trial court fails to address or otherwise correct a misstatement of the evidence."); *see State v. Jones*, 355 N.C. 117, 133, 558 S.E.2d 97,

107 (2002) (holding the "standard of review for assessing alleged improper closing arguments that fail to provoke timely objection from opposing counsel is whether the remarks were so grossly improper that the trial court committed reversible error by failing to intervene *ex mero motu*.").

For a trial court to intervene during a closing argument without a timely objection, the statement must be extreme and "grossly improper" to render the trial "fundamentally unfair" to a defendant's due process rights. *Parker*, 377 N.C. at 472, 858 S.E.2d at 599. That is, "[a] 'trial court is not required to intervene *ex mero motu* unless the argument strays so far from the bounds of propriety as to impede defendant's right to a fair trial.'" *Id.* (quoting *State v. Smith*, 351 N.C. 251, 269, 524 S.E.2d 28, 41 (2000)). Even if a particular argument were improper, we look to whether a defendant was prejudiced by assessing "the likely impact of any improper argument in the context of the entire closing." *State v. Copley*, 374 N.C. 224, 230, 839 S.E.2d 726, 730 (2020) (cleaned up).

Here, the prosecutor's statement during the closing argument was an improper misstatement of the evidence. *See Parker*, 377 N.C. at 474, 858 S.E.2d at 601 ("The misstatements by the prosecutor appear to be mistakes in arguing the evidence admitted at trial for which defendant did not lodge an objection, and defendant has failed to meet his heavy burden."). Still, it was not grossly improper such that it prejudiced defendant to warrant a new trial when measured against the entirety of the closing. *See id.*; *see also State v. Peterson*, 361 N.C. 587, 606–07, 652 S.E.2d 216,

229 (2007) ("Because we assume the argument was improper, we must determine whether the argument prejudiced defendant to the degree that he is entitled to a new trial.").

"This is not the case where an attorney engage[d] in name-calling, ma[de] statements of opinion, intrude[d] upon constitutional rights, or reference[d] events outside of the evidence." *Id.* (citing *Jones*, 355 N.C. at 130, 558 S.E.2d at 106); *see Jones*, 355 N.C. at 133, 558 S.E.2d at 107 ("[W]e hold that the trial court abused its discretion when it allowed, over defendant's objection, the prosecutor's closing argument linking the tragedies of Columbine and Oklahoma City with the tragedy of the victim's death in this case."); *see also State v. Ward*, 354 N.C. 231, 266, 555 S.E.2d 251, 273 (2001) (holding the trial court erred in not intervening *ex mero motu* when the prosecutor impermissibly commented on the defendant's right to remain silent during sentencing by stating, "he decided just to sit quietly. He didn't want to say anything that would 'incriminate himself'"). "Absent extreme or gross impropriety in an argument, a judge should not be thrust into the role of an advocate based on a perceived misstatement regarding an evidentiary fact when counsel is silent." *Parker*, 377 N.C. at 474, 858 S.E.2d at 601.

Defendant next contends that the trial court erred by misstating North Carolina Criminal Pattern Jury Instruction 101.20, *Weight of the Evidence*, which reads:

> You are the sole judges of the weight to be given any
> evidence. *If you decide that certain evidence is believable*
> you must then determine the importance of that evidence
> in light of all other believable evidence in the case.

N.C.P.I.—Crim. 101.20 (June 2011 Replacement) (emphasis added). The parties

agreed to this instruction, but during the actual charge, the trial court rendered the

following:

> Weight of the evidence. You are the sole judges of the
> weight to be given any evidence -- to any evidence. *You
> must decide that certain evidence is believable.* You must
> then determine the importance of that evidence in light of
> all the other believable evidence in the case.

If a trial court erred by deviating from the agreed-upon instructions, such "[a]n

error in jury instructions is prejudicial and requires a new trial only if there is a

reasonable possibility that, had the error in question not been committed, a different

result would have been reached at the trial out of which the appeal arises." *State v.

Castaneda*, 196 N.C. App. 109, 116, 674 S.E.2d 707, 712 (2009) (cleaned up). And if

the instructions construed as a whole made "it sufficiently clear that no reasonable

cause exists to believe that the jury was misled or misinformed, any exception to it

will not be sustained even though the instruction could have been more aptly

worded." *State v. Williams*, 299 N.C. 652, 660, 263 S.E.2d 774, 779-80 (1980)

(citations omitted).

> The meaning of jury instructions derives from the
> instructions' totality:

> It is well established in North Carolina that courts will not find prejudicial error in jury instructions where, taken as a whole, they present the law fairly and clearly to the jury. Isolated expressions of the trial court, standing alone, will not warrant reversal when the charge as a whole is correct.

*State v. Graham*, 287 N.C. App. 477, 486–87, 882 S.E.2d 719, 727 (2023) (cleaned up); *see also Odom*, 307 N.C. at 661, 300 S.E.2d at 378–79 ("In deciding whether a defect in the jury instruction constitutes 'plain error,' the appellate court must examine the entire record and determine if the instructional error had a probable impact on the jury's finding of guilt.").

While the trial court erroneously varied in its application of the instructions, the impact failed to have a probable impact on defendant's guilt when read in context. *See State v. Williams*, 315 N.C. 310, 327-28, 338 S.E.2d 75, 86 (1986) (cleaned up) ("We have recognized that every variance from the procedures set forth in the statute does not require the granting of a new trial."). In other words, given the charge instructions in their entirety, the variance is not so fundamental that the jury would have reached a different result. *See Lawrence*, 365 N.C. at 518, 723 S.E.2d at 334.

Next, the State concedes defendant's argument that the habitual felon indictment was fatally defective since two of the referenced convictions fall outside the purview of N.C. Gen. Stat. § 14-7.1 (2023). Both parties are correct on this point. I would therefore remand the case for resentencing. This result renders defendant's petition for writ of *certiorari* moot.

Last, defendant argues that the trial court erred by ordering restitution for $592,000 as unsupported by the evidence. "[T]he quantum of evidence needed to support a restitution award is not high. When there is some evidence about the appropriate amount of restitution, the recommendation will not be overruled on appeal." *State v. Moore*, 365 N.C. 283, 285, 715 S.E.2d 847, 849 (2011) (cleaned up). Mr. Todd testified, "First bill I got was $525,000. Then I got an air flight bill. I think it was $42,000. And I'm still going to doctors." Hence, there was at least "some evidence" supporting an award of restitution. Still, it does not provide the level of specificity required to support the award. *Id.* at 286, 715 S.E.2d at 849. As a result, remand is necessary "for the trial court to determine the amount of damage proximately caused by defendant's conduct and to calculate the correct amount of restitution." *Id.* at 286, 715 S.E.2d at 849-50.

Considering the foregoing, I would hold any error allowing the trooper's opinion testimony did not rise to the level of plain error and defendant's trial counsel did not provide ineffective assistance. Additionally, I would hold that the trial court did not prejudicially err when it instructed the jury or failed to intervene *ex mero motu* during the prosecutor's closing argument. Therefore, I would affirm defendant's convictions for injury to personal property and assault with a deadly weapon with intent to kill or inflict serious bodily injury. However, as conceded by the State, I would reverse defendant's habitual felon status conviction due to the fatally defective indictment and remand this case for resentencing without the habitual felon

9

sentencing enhancement.  Additionally, on remand, the trial court should review the restitution award to determine the amount of damage proximately caused by defendant.